THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL B. MASKELL, Defendant-Appellant.

Second District    No. 2—98—0236

Opinion filed April 14, 1999.—Rehearing denied May 14, 1999.

78

G. Joseph Weller and R. Christopher White, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Following a bench trial, defendant, Paul B. Maskell, was convicted of burglary (720 ILCS 5/19—1(a) (West 1996)) and sentenced to a term of four years' incarceration. Defendant appeals and contends that his conviction must be reversed because the evidence showed that he committed residential burglary (720 ILCS 5/19—3(a) (West 1996)) and therefore he could not properly be convicted of burglary. We affirm.

The incident that gave rise to the charge against defendant occurred in an apartment building on August 15, 1997. An indictment was returned against defendant for one count of burglary. The indictment charged that defendant committed burglary when he "without authority, knowingly entered a building of Preston Thomas, located at [a certain address in Du Page County] with the intent to commit therein a theft."

At trial, the State called Travis Thomas (Travis) as a witness. Travis's testimony included the following. On August 15, 1997, he lived with his father, Preston Thomas, his mother, Mona Lisa Nelson, and his sister, Alicia Thomas, in an apartment in the building identified in the indictment (the building). The building had three floors and the family lived in apartment number five on the third floor of the building. There were no elevators in the building. In order to reach the front door of the family's apartment, a person had to climb four sets of stairs, two between the first and second floors, and two between the second and third floors.

Travis's testimony also included the following. On August 15, 1997, at about 5 p.m., Travis was in the family's apartment with his mother and father. At that time, the family's TV was in the living room of the apartment. The TV is about 50 to 60 inches high and about 30 inches wide. The front door of the apartment opens into the living room. The front door is metal and closes automatically. Sometime after 5 p.m., Travis left the building for a short time.

When Travis returned, he entered the building through its front door and began climbing the front stairs to the family's apartment. When he got to the part of the front stairs between the second and third floors, Travis saw defendant "pushing our television down the stairs." Travis asked defendant what he was doing. Travis testified that defendant told him that his father had asked defendant to repair the TV and that defendant was taking it back up the stairs. Travis observed that defendant was above the TV and that there were wires extending from the TV toward the apartment. Travis continued going up the stairs to the apartment. He noticed that the apartment door was open and that there was a note taped near the door. The note indicated that Travis's mother and father were next door visiting friends. Travis went into the apartment and saw that a lamp inside the apartment was broken.

Travis further testified that he then ran out of the apartment and down the front stairs of the building past defendant, who was still standing near the TV. Travis ran out of the building and into the building next door to get his father. Travis told his father that someone had broken into the family's apartment. Travis's father and the friend he was visiting, DuRay, then ran to the building in which the family lived. Travis waited outside. His father, DuRay, and defendant later came out the front door of the building together. His father and DuRay then went to the back of the building and talked to two men who were there. His father then returned to the front of the building and called defendant's name. However, defendant ran and jumped into a cab which quickly drove off. Travis did not give defendant or anyone else permission to enter the building or the family's apartment or to take the TV.

Preston Thomas (Preston) testified that he owned the TV that was in the family's apartment on August 15, 1997. Preston knew defendant from three visits that defendant made to the apartment prior to August 15, 1997. Defendant did not live in the building. Other than the three previous visits, Preston never gave defendant permission to enter the building. The building contained six apartments.

Preston further testified that on August 15, 1997, at around 5 p.m., he was in the family's apartment with his wife, Mona, and his

son, Travis. Sometime before 6 p.m., Travis left the apartment. After Travis left, Preston and his wife also left the apartment and went to visit friends who lived in the building next door. Before leaving, Preston left a note on the front door of the apartment. The note stated that Preston and his wife would be next door. When Preston and his wife left, the TV was in the living room of the apartment and the front door was latched but was not locked. The front door of the apartment had an automatic door closer, and therefore a person could not push it open just by knocking.

Preston further testified that while he was next door his son Travis came running over and told him that someone had broken into the apartment. Preston and two friends immediately ran over to the building that contained the family's apartment. They met defendant coming down the front stairs of the building. Preston testified that defendant told him that some guys tried to break into the apartment, that he knew who they were, and that if Preston wanted to catch them they were outside. Preston went outside and confronted the individuals whom defendant had pointed out. Preston got into an argument with the individuals. Preston then looked for defendant but he was getting into a cab. Preston called out to defendant, but defendant quickly left in the cab.

The State also called Mona Lisa Nelson as a witness. She lived in the apartment on August 15, 1997. She testified that on that date she did not give anyone permission to take the TV from the apartment.

William Andrewski, a police officer for the Village of Woodridge, testified that he was called to the building on August 15, 1997. At the building, Andrewski observed a large TV on the landing of the front stairs between the second and third floors. Andrewski described the TV as at "an angle as you would bring it down the stairs straight and then start on a turn."

The State called William Hoogland, a Woodridge police officer, as a witness. Hoogland's testimony included the following. Hoogland interviewed defendant on August 15, 1997. During the interview defendant made statements to Hoogland that included the following: on August 15, 1997, defendant went to the building to visit a "crack head"; defendant rang the buzzer near the downstairs front door of the building several times; no one answered the buzzer; however, defendant was able to pull the door open; defendant entered the building and went up to the third floor; on the third floor, defendant noticed that the door to apartment number five was open; because he was familiar with the people who lived in the apartment, defendant yelled inside; two black males then approached defendant from behind and asked defendant what he was doing; defendant got scared and began

to leave the building; as he was leaving, defendant met Travis Thomas near the front door of the building; defendant told Travis that there were some guys upstairs who were trying to "rip off his dad's apartment"; as he was walking away from the building, defendant met Preston Thomas and told him that "people were up there trying to rip off his apartment"; defendant got "nervous and scared" and left the scene in the cab that was waiting for him.

On cross-examination, Hoogland testified that defendant told him that he did not take a TV from Preston's apartment. Defendant also told Hoogland that two black individuals told him that "they were going to stick him." Hoogland also acknowledged that in a written statement defendant did not state that he went into apartment number five.

The State called Kevin John Lindblom, a Woodridge police officer, as a witness. Lindblom's testimony included the following. Lindblom transported defendant to police headquarters on August 15, 1997. While he was transporting defendant to police headquarters, Lindblom briefed defendant as to why he was in custody and defendant then denied that he was involved in the theft of the TV.

Lindblom further testified that he had a conversation with defendant at police headquarters on August 14, 1997, the day before the theft of the TV. During the conversation, defendant told Lindblom that defendant's girlfriend was using or smoking crack cocaine in Preston Thomas's apartment and that defendant wanted to work for the police to buy drugs for the police. Because Lindblom concluded that defendant was "highly intoxicated" at the time, Lindblom told defendant that he should contact Lindblom again in the future. Lindblom testified that defendant then became very irate and stated that he would "just go over there and kick in [Preston's] apartment door."

On cross-examination, Lindblom acknowledged that on August 14 defendant did not mention anything about taking a TV or taking anything else from Preston Thomas. Rather, defendant merely made the statement about kicking in the door.

Following Lindblom's testimony, the State rested. Defendant did not present any evidence.

The trial court found defendant guilty of burglary. In making its finding, the trial court noted that there were credibility issues regarding the testimony of the witnesses. The trial court specifically mentioned defendant telling Travis that he was bringing the TV back to the apartment after fixing it when the wires dangling out of the TV trailed back to the apartment. The trial court then stated "[t]here is no question that somebody broke into the apartment and removed [the TV] and who is standing there with it but the defendant."

The trial court subsequently denied defendant's motion to reconsider the guilty finding or grant defendant a new trial. The trial court also denied defendant's motion to reconsider his sentence of four years' imprisonment. Defendant's timely appeal followed.

On appeal, defendant contends that his burglary conviction must be reversed because although the evidence presented at trial might support a conviction of residential burglary it could not support a conviction of burglary. Relying on our supreme court's opinion in *People v. Childress*, 158 Ill. 2d 275 (1994), defendant posits that burglary and residential burglary are mutually exclusive. Defendant maintains that this proposition means that where a residential burglary occurs a burglary cannot also occur. Defendant argues that the facts of this case support a residential burglary and therefore cannot support a burglary, the offense that he was charged with and convicted of committing.

■ The State initially responds that defendant has waived this issue because he failed to raise it in the trial court. Defendant does not dispute that he failed to raise this issue below. Therefore the issue would ordinarily be deemed waived. *People v. Enoch*, 122 Ill. 2d 176, 186-88 (1988). However, defendant argues that we should address the issue as plain error pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) because the error is so fundamental that it could allow his conviction for an offense that he did not commit. We agree with defendant and will therefore review the issue under the plain error rule.

On the merits, the State does not disagree with the proposition that burglary and residential burglary are mutually exclusive as stated in *Childress*. Instead, the State takes the position that facts such as those in this case could support convictions of either burglary or residential burglary notwithstanding their mutual exclusiveness. The State argues that when such facts occur it can choose whether to charge a defendant with burglary or with residential burglary. In the State's view, the mutual exclusiveness of burglary and residential burglary merely means that a defendant cannot be convicted of both burglary and residential burglary even if the facts would support convictions of both offenses.

■ The burglary statute provides:

"A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4—102 of The Illinois Vehicle Code, nor

the offense of residential burglary as defined in Section 19—3 hereof." 720 ILCS 5/19—1(a) (West 1996).

The residential burglary statute provides:

"A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." 720 ILCS 5/19—3(a) (West 1996).

For purposes of the residential burglary statute, the Criminal Code of 1961 defines "dwelling" as:

"[A] house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2—6(b) (West 1996).

In *Childress*, after considering the burglary and residential burglary statutes, the court stated that the two offenses were mutually exclusive. The court explained that "[r]esidential burglary can be committed only in dwelling places, while simple burglary cannot occur in a dwelling place." *Childress*, 158 Ill. 2d at 302. The court then determined that the defendant in that case could not have been guilty of burglary because the victim was attacked and killed in her own home, which was a dwelling place. *Childress*, 158 Ill. 2d at 302.

In this case, defendant asserts that it is undisputed that the TV was removed from the family's apartment and that the family's apartment was a dwelling place for purposes of the residential burglary statute. Defendant also asserts that the State argues that the evidence at trial was sufficient to prove that he entered the apartment. Relying on these assertions and on *Childress*, defendant argues that no rational trier of fact could have found him guilty of burglary because the theft of the TV occurred in a dwelling place.

The State responds that it does not disagree with defendant that the evidence was sufficient to prove that defendant entered the apartment and that the evidence therefore would have supported a charge of residential burglary against defendant. However, the State maintains that the evidence was also sufficient to support a charge of burglary against defendant.

In support of this position, the State contends that the evidence showed that defendant entered the building as well as the apartment without permission; that when defendant entered the building he did not enter a dwelling place; and that when defendant entered the building he did so with the intent to commit a theft in the building. Based on these contentions, the State asserts that the evidence was sufficient to establish the necessary elements of burglary against defendant because defendant knowingly entered a building without authority and with the intent to commit a theft in the building.

■ The necessary elements of the crime of burglary are (1) entry into one of the structures listed in the burglary statute, such as a "building"; (2) without authority; and (3) "with the intent to commit therein a felony or theft." 720 ILCS 5/19—1(a) (West 1996). If the unauthorized entry with the intent to commit a felony or theft is into a "dwelling place," then the offense committed is residential burglary and cannot be burglary. *Childress*, 158 Ill. 2d at 302. Thus the critical question in determining whether a defendant committed burglary or residential burglary is the nature of the place entered without authority and with the requisite intent.

In this case, the parties agree that if the evidence was sufficient to show that defendant entered the apartment without authority and with the intent to commit the theft of the TV then the evidence was sufficient to show that defendant committed residential burglary. However, the State maintains that the evidence was also sufficient to show that defendant entered the building, which was not a dwelling place as such, without authority and with the intent to commit a theft or felony in the building and therefore the evidence was also sufficient to show that defendant committed burglary. The State argues that because the evidence could support a finding of guilt for either crime it could choose which crime to charge defendant with. We agree.

■ The cases that defendant primarily relies on, *Childress* and *People v. Borgen*, 282 Ill. App. 3d 116 (1996), each involved a single unauthorized entry by a defendant with the intent to commit a felony or theft. Consequently, the evidence in those cases would support only a single residential burglary conviction or a single burglary conviction, depending on whether the entry was into a dwelling place or not into a dwelling place.

Unlike *Childress* and *Borgen*, the evidence in this case would allow a rational trier of fact to find that defendant made two unauthorized entries. These unauthorized entries were (1) into the building and (2) into the apartment. Moreover, defendant does not dispute the State's assertion that the stairwell of the building, the area of the building that defendant entered when he entered the building, was not a dwelling place.

Defendant does argue that there was no evidence to show that he was in the building without authority. However, the statements that defendant made to the police included statements that there was no response when defendant used the buzzer to gain entry to the building and that defendant then just pulled the front door of the building open. These statements were sufficient to show that defendant entered the building without authority.

Defendant also argues that the State failed to prove that he had

the intent to commit theft when he entered the building. We disagree. Based on the totality of the circumstances, a rational trier of fact could have inferred that when defendant entered the building he had the intent to commit a theft in the building.

For these reasons, we conclude that the trial court's finding that defendant was guilty of burglary was not improper even though the evidence was also sufficient to prove that defendant committed residential burglary.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN, P.J., and HUTCHINSON, J., concur.