THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DERRICK BLANKS, Defendant-Appellant.

First District (6th Division)   No. 1—02—0161

Opinion filed September 30, 2005.

Michael J. Pelletier and Deborah Israel, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Janet Powers Doyle, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MALLEY delivered the opinion of the court:

Following a bench trial, defendant was found guilty of aggravated battery against Randall Blackburn and the burglary of David Demulemeester's home. He was sentenced to an extended-term of six years' imprisonment for the Class 3 felony offense of aggravated battery and a concurrent term of six years' imprisonment for the Class X felony offense of burglary. On appeal, defendant asks: (1) whether his burglary conviction should be reversed because the amendment to the residential burglary statute which included burglary as a lesser-included offense of residential burglary was not effective until after his conviction; (2) whether he was proved guilty beyond a reasonable doubt of committing aggravated battery with a "deadly weapon" to wit, a club, which was approximately 30 inches long and 2 inches thick and the injuries sustained by Blackburn were not consistent with "great bodily harm"; and (3) whether he must be resentenced because the mandatory Class X sentencing statute and the extended-term sentencing statute violate his right to due process and trial by jury by increasing the maximum sentence without notice or a jury finding upon proof beyond a reasonable doubt of the facts qualifying him for sentences beyond the prescribed sentencing range, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

On March 15, 2004, we issued an opinion on this case where we affirmed defendant's convictions and sentence. On April 5, 2004, defendant filed a petition for rehearing. On April 8, 2004, defendant filed a motion to cite, as additional authority, a decision by another

division of this court, *People v. Atkins*, 348 Ill. App. 3d 126, 130, 809 N.E.2d 152 (2004), which addressed the same residential burglary statute at issue in the instant case.[1] On April 14, 2004, we granted that motion. Upon rehearing, this court heard oral argument from the parties on this case on May 25, 2005. On September 22, 2005, we withdrew our opinion of March 15, 2004. On that same date, we granted defendant's petition for rehearing. Upon rehearing and for the reasons set forth below, we now affirm the circuit court's ruling in part and reverse in part.

## BACKGROUND

Defendant was charged with residential burglary (720 ILCS 5/19—3 (West 2000)) of David Demulemeester's home on the afternoon of September 7, 2000. Defendant was also charged with aggravated battery against Harold DeLeo and Randall Blackburn while using a deadly weapon, "a club." See 720 ILCS 5/12—4(b)(1) (West 2000). Two additional counts charged that the aggravated batteries occurred while on or about a public way. See 720 ILCS 5/12—4(b)(8) (West 2000).

Homeowner David Demulemeester testified at trial that on September 7, 2000, although he was having his house "remodeled," he was still living in and occupying the house. Workers had been remodeling the home for approximately five months prior to the September 7 unauthorized entry. Demulemeester further testified that none of his property was missing from his home after defendant's unauthorized entry.

Harold DeLeo testified at defendant's bench trial that on September 7, 2000, he was completing remodeling work on the home of David Demulemeester. The doors of the home were not locked because his workers were bringing materials and tools in and out. At approximately 2:30 p.m., DeLeo saw defendant in the front room picking up tools off the floor. DeLeo testified that defendant is not a construction worker with his company. DeLeo ran toward defendant and told him to stop. They began fighting and defendant dropped the tools and tried to get out of the house. The struggle moved to the outdoor front porch and DeLeo noticed his company phone in defendant's pocket. Eventually, DeLeo took the phone from defendant. Defendant ran away. Shortly thereafter, defendant returned to Demulemeester's home; DeLeo saw defendant holding a "stick" that was "[t]wo inches by two inches by approximately forty-two inches."

---

[1]The Illinois Supreme Court allowed the State's petition for leave to appeal on October 6, 2004. *People v. Atkins*, 211 Ill. 2d 585 (2004).

DeLeo testified that defendant was swinging the stick "pretty wildly." Eventually, DeLeo took the stick from defendant.

Randall Blackburn testified that he observed defendant picking up tools inside the house. Blackburn and DeLeo told defendant to leave. Blackburn, DeLeo and defendant went outside. Blackburn and defendant fought outside. Then defendant ran down the street. Blackburn testified that about two minutes later, defendant returned, running toward him "with a stick." Blackburn described the "stick" as a "[t]wo by two Wolmanized water-treated spindle for a railing." Defendant hit Blackburn in the forehead. The blow rolled Blackburn back, but he did not fall. Blackburn stated that he still had a "knot" on his head from the blow. He also testified that he suffered a scratch on his right forearm. Pictures of his head and forearm were identified at trial and are in the record. Blackburn stated that the picture did not accurately reflect the injury to his head because his hair concealed the swelling.

Officer Jessie Avila, one of the arresting officers, testified that Blackburn only reported the first incident, which started inside the house, and being hit with a stick. Blackburn did not report that after the initial altercation, defendant returned to the scene sometime later and hit Blackburn with a stick. The property inventory report completed by Officer Avila described the weapon used as a "2 x 2 stick approx. 30 inches in length."

The State rested its case and defendant moved for directed finding on counts IV and V (aggravated battery in a public way). Defendant was found not guilty of counts IV and V. Following argument, defendant was also found not guilty of count II (aggravated battery with a deadly weapon against DeLeo). Counts I and III, residential burglary and aggravated battery against Blackburn, remained.

In defendant's case in chief, the parties stipulated that on September 8, 2000, defendant was hospitalized and treated for a collapsed lung. The defense then rested its case in chief.

The court stated that it was "not convinced beyond a reasonable doubt that a residential burglary occurred." In finding defendant guilty of burglary and aggravated battery, the court reasoned: "I'm finding him guilty of the lesser-included of burglary because of the situation of the house and the way it was under construction and the fact that there were workmen there." The court further noted that defendant was discovered taking the property of the construction company, not the homeowner. The court also held that the "stick" was a deadly weapon for purposes of the aggravated battery conviction.

Defendant moved for a new trial, arguing that at the time of the offense, burglary was specifically not a lesser-included offense of

residential burglary and that the amendment to the residential burglary statute, which became effective on June 1, 2001, some eight months subsequent to the offense, was not retroactive. He further contended that the State failed to prove that the "stick" used was a deadly weapon pursuant to section 12—4 of the Criminal Code of 1961 (720 ILCS 5/12—4(b)(1) (West 2000)). The State responded that the legislative intent of the statute at the time of defendant's offense was to include burglary as a lesser offense of residential burglary. The State also argued that, based on the court's interpretation of the evidence, the home was not being used as a dwelling place at the time of the offense but rather as a work site and defendant could be found guilty of burglary. The trial court reasoned that because the amendment was a procedural change and not a substantive one, it could be applied retroactively and it was, therefore, proper to find defendant guilty of burglary. Defendant's motion for a new trial was denied.

At sentencing, the court found that defendant was eligible for mandatory Class X sentencing on the burglary conviction[2] and found him eligible for an extended-term sentence for the aggravated battery conviction.[3] Based on his criminal history, defendant was sentenced to an extended-term of six years' imprisonment for aggravated battery and a concurrent term of six years' imprisonment for burglary. Defendant now appeals his convictions for burglary and aggravated battery; he further challenges the constitutionality of the Class X and extended-term sentences.

## ANALYSIS

### I. Defendant's Conviction for Residential Burglary

■ Defendant in the case *sub judice* was found guilty of burglary,

---

[2]Burglary is a Class 2 felony (720 ILCS 5/19—1(b) (West 2000)), for which the sentence shall be three to seven years' imprisonment (730 ILCS 5/5—8—1(a)(5) (West 2000)). However, pursuant to the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(8) (West 2000)), when a defendant has two Class 2 or greater convictions in his background (here, armed robbery and attempted burglary) defendant receives a mandatory Class X sentence, for which the sentence shall be 6 to 30 years' imprisonment (730 ILCS 5/5—8—1(a)(3) (West 2000)).

[3]Aggravated battery is a Class 3 felony (720 ILCS 5/12—4(e) (West 2000)) for which one may be sentenced to two to five years' imprisonment (730 ILCS 5/5—8—1(a)(6) (West 2000)). However, pursuant to the Unified Code of Corrections (730 ILCS 5/5—5—3.2(b)(1) (West 2000)), defendant's prior aggravated battery conviction made him eligible for an extended-term sentence of 5 to 10 years' imprisonment (730 ILCS 5/5—8—2(a)(5) (West 2000)) for the present Class 3 felony.

instead of the charged offense of residential burglary, "because of the situation of the house and the way it was under construction." Defendant contends that his conviction must be reversed because he could not be found guilty of burglary where the unauthorized entry was to a dwelling place and burglary and residential burglary were mutually exclusive offenses at the time of the offense. Moreover, he maintains that, contrary to the trial court's ruling, the amendment to the residential burglary statute (which now includes the offense of burglary) was a substantive change that could not be applied retroactively. The State contends that the trial court was correct in holding that the amendment to the statute did not make a substantive change in the law, in that neither the elements of residential burglary nor the elements of burglary changed as a result of the amendment. Upon reconsideration of defendant's arguments and the arguments he put forth in his petition for rehearing, we reverse defendant's burglary conviction.

In finding defendant guilty of burglary, the trial court found it significant that the home was undergoing remodeling or construction at the time of defendant's entry and he was discovered taking the property of the construction company present. For purposes of section 19—3, " 'dwelling' means a house, apartment, *** or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2—6(b) (West 2000). At trial, the homeowner testified that despite the remodeling, he was still living in the house on September 7, 2000. Therefore, there can be no question that the building where the crime took place was a dwelling place for purposes of the residential burglary statute. Relative to the fact that defendant was discovered taking the property of the construction company, and not the homeowner, the critical question in determining whether a defendant committed burglary or residential burglary is the nature of the place entered without authority and with the requisite intent, not the nature of the goods taken. *People v. Maskell*, 304 Ill. App. 3d 77, 84, 710 N.E.2d 449 (1999). The evidence, therefore, is uncontroverted that defendant entered the dwelling place of another in violation of the residential burglary statute.

Consequently, defendant could not have committed the offense of burglary because the offenses of residential burglary and burglary were mutually exclusive at the time of the commission of the crime. As a matter of law, therefore, defendant could not have been found guilty of burglary beyond a reasonable doubt. *People v. Borgen*, 282 Ill. App. 3d 116, 119-20, 668 N.E.2d 234 (1996). As defendant pointed out during proceedings pursuant to the rehearing petition, several months

after this court issued the first opinion in the instant case, another division of this court reversed the conviction of a defendant tried under the same residential burglary statute at issue in the instant case. See *People v. Atkins*, 348 Ill. App. 3d 126, 130, 809 N.E.2d 152 (2004) (reversing defendant's conviction for residential burglary; the trial court noted that a defendant could not be "convicted *** of burglary as a lesser-included offense of residential burglary" because the Illinois Supreme Court clearly held that "burglary and residential burglary were mutually exclusive offenses"). Upon our review of the instant case on rehearing in light of this court's holding in *Atkins*, we now find that *Atkins* properly stated the law; accordingly, we reverse defendant's conviction for burglary.

As the *Atkins* court noted, the Illinois Supreme Court explicitly held that the two offenses of residential burglary and burglary are "mutually exclusive." See *Atkins*, 348 Ill. App. 3d at 128, quoting *People v. Childress*, 158 Ill. 2d 275, 302, 633 N.E.2d 635 (1994). In *Childress*, the court noted that "[r]esidential burglary can be committed only in dwelling places, while simple burglary cannot occur in a dwelling place." *Childress*, 158 Ill. 2d at 302. The court then determined that the defendant in that case could not have been guilty of burglary because the victim was attacked and killed in her own home, which was a dwelling place. *Childress*, 158 Ill. 2d at 302.

It is notable that prior to *Childress*, by convention, our courts recognized burglary as a lesser-included offense of residential burglary. See *People v. Edgeston*, 243 Ill. App. 3d 1, 10, 611 N.E.2d 49 (1993); *People v. Wiley*, 169 Ill. App. 3d 140, 523 N.E.2d 1344 (1988); *People v. Johnson*, 129 Ill. App. 3d 399, 401, 472 N.E.2d 854 (1984); *People v. Dawson*, 116 Ill. App. 3d 672, 452 N.E.2d 385 (1983). The June 2001 amendment allows the trial courts to return to such a principle.

On the date of defendant's unauthorized entry, however, the burglary statute defined the offense of burglary as follows:

"(a) A person commits burglary when without authority, he *knowingly* enters *or without authority remains* within a building *** with the intent to commit therein a felony or theft. This offense shall not include *** the offense of residential burglary as defined in Section 19—3 hereof." 720 ILCS 5/19—1(a) (West 2000).

The residential burglary statute provided:

"(a) A person commits residential burglary who knowingly and *without authority* enters the dwelling place of another with the intent to commit therein a felony or theft." 720 ILCS 5/19—3(a) (West 2000).

We note that the unamended burglary statute excludes residential burglary as a related offense. See 720 ILCS 5/19—1(a) (West 2000).

Moreover, the unamended residential burglary statute does not make mention of the offense of burglary at all. See 720 ILCS 5/19—3(a) (West 2000).

The amended residential burglary statute now provides, in pertinent part, "This offense includes the offense of burglary as defined in Section 19—1," which means that burglary is a lesser-included offense of residential burglary. See 720 ILCS 5/19—3(a) (West 2002). "A lesser-included offense" is defined as an offense that " '[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged.' " *People v. Jones,* 149 Ill. 2d 288, 292-93, 595 N.E.2d 1071 (1992), quoting Ill. Rev. Stat. 1987, ch. 38, par. 2—9(a). As the *Atkins* court pointed out, while the amendment does not create a "new" crime, it does potentially expose a defendant to a conviction on an additional crime which could not have been the case prior to the amendment when the offenses of burglary and residential burglary were mutually exclusive. *Atkins,* 348 Ill. App. 3d at 130. The residential burglary statute was amended by Public Act 91—928, which became effective on June 1, 2001, some eight months after the commission of the crime charged here. As such, Blanks did not have proper notice and an opportunity to craft a defense against the offense of "burglary," rather than "residential burglary"; this exposed him to an "additional" crime as described by the *Atkins* court.

Further, we decline to follow the State's recommendation that we apply the June 2001 amendment to the residential burglary statute retroactively. In matters of statutory interpretation, the appropriate standard of review is *de novo. People v. Swift,* 202 Ill. 2d 378, 385, 781 N.E.2d 292 (2002). Generally, an amendment to a statute will be construed to apply prospectively, not retroactively. *Rivard v. Chicago Fire Fighters Union, Local No. 2,* 122 Ill. 2d 303, 309, 522 N.E.2d 1195 (1988). This presumption may be rebutted by express statutory language or by necessary implication. *People v. Digirolamo,* 179 Ill. 2d 24, 50, 688 N.E.2d 116 (1997). The act itself must clearly indicate that the legislature intended a retroactive application. *Harraz v. Snyder,* 283 Ill. App. 3d 254, 259, 669 N.E.2d 911 (1996), citing *Rivard,* 122 Ill. 2d at 309. The long-standing rule is that the prospective application of statutes is to be preferred to retroactive application because of the fundamental principle of jurisprudence that the retroactive application of new laws is usually unfair and the general consensus that notice or warning of the rule should be given in advance of the action whose effects are to be judged. *Harraz,* 283 Ill. App. 3d at 259.

In determining whether an amendment is to be applied prospec-

tively or retroactively, we observe that there is no bright-line test for reaching this conclusion. Notably, though, the Illinois Supreme Court has adopted the reasoning in *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994), for determining when new legislation should be applied to existing controversies. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 39, 749 N.E.2d 964 (2001). Quoting *Landgraf*, the *Commonwealth Edison* court remarked:

> "[W]hen the legislature has not indicated what the reach of a statute should be, then the court must determine whether applying the statute would have a retroactive impact, i.e., 'whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' [Citation.] If there would be no retroactive impact, as that term is defined by the court, then the amended law may be applied." *Commonwealth Edison*, 196 Ill. 2d at 38, quoting *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505.

Moreover:

> " '[T]he court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.' " *Commonwealth Edison*, 196 Ill. 2d at 39, quoting *Landgraf*, 511 U.S. at 269-70, 128 L. Ed. 2d at 254-55, 114 S. Ct. at 1499.

Where the legislature intends a retroactive application of the amendment and the statutory amendment relates to changes in procedure or remedies, it applies retroactively to pending cases. *Digirolamo*, 179 Ill. 2d at 50. In general, a procedural law is " '[t]hat which prescribes the method of enforcing rights or obtaining redress for their invasion; machinery for carrying on a suit.' " *People v. Ruiz*, 107 Ill. 2d 19, 22-23, 479 N.E.2d 922 (1985), quoting Black's Law Dictionary 1367 (4th ed. 1951). Procedural laws are the rules "which prescribe[ ] method[s] of enforcing rights or obtaining redress for their invasion." Black's Law Dictionary 1203 (6th ed. 1990). If an amendment is procedural, legislative intent may be divined through any of the ordinary devices of statutory interpretation: (1) the evil to be remedied and the object to be obtained, (2) the reason and necessity for the statute, and (3) the history of legislation, including statements made by the sponsors of the legislation during the legislative debates. *Rivard*, 122 Ill. 2d at 310.

In contrast, a substantive law establishes the rights whose inva-

sion may be redressed through a particular procedure. *Rivard*, 122 Ill. 2d at 310-11. A substantive law is the part of the law that creates, defines, and regulates the rights, duties, and powers of parties. Black's Law Dictionary 1429 (6th ed. 1990). See *Digirolamo*, 179 Ill. 2d at 50 (where amendment represents a substantive change in the law by altering the elements to be proved by the State in a criminal case). Amendments to statutes involving substantive rights cannot be applied retroactively. *Digirolamo*, 179 Ill. 2d at 50.

Whether the amendment to the burglary statute is to be applied retroactively or prospectively is determined in two ways. First, when the amendment clearly indicates that the legislature intended a retroactive application, it will be so applied. *People v. Kellick*, 102 Ill. 2d 162, 180, 464 N.E.2d 1037 (1984). Here, there is no express language in the amendment indicating a legislative intent for retroactive application. Secondly, the courts may not only look to the language of the amendment, but also must consider the purpose and objective of the amendment and the legislative history. *People v. Fiorini*, 143 Ill. 2d 318, 333, 574 N.E.2d 612 (1991). As such, we must turn to the text of the amendment to determine whether the amendment applies only to changes in procedure or remedies, rather than substantive rights. See *Fiorini*, 143 Ill. 2d at 335.

The *Atkins* court also considered the question of retroactivity in light of the amendment's language. *Atkins*, 348 Ill. App. 3d at 128-30. In that case, the *Atkins* court noted that the amendment changed the language of the statute such that burglary is now a lesser-included offense of residential burglary which may be considered against a single defendant arising from a single charging instrument and at the same proceeding, whereas, prior to the amendment they were mutually exclusive offenses and could not be considered against a single defendant. *Atkins*, 348 Ill. App. 3d at 128-29. The *Atkins* court went on to state the change in the act was substantive, as it permitted an accused person to be exposed to a conviction for an "additional crime which was not the case prior to the amendment." *Atkins*, 348 Ill. App. 3d at 130. The court reasoned that "[w]here a statute permits a conviction for an uncharged offense," it therefore "applies to the 'right or duties' " of the accused individual and is therefore substantive, rather than procedural, in nature *Atkins*, 348 Ill. App. 3d at 129. We agree and therefore find the statute affected substantive, rather than procedural, interests. Thus, in our view, the amendment to section 19—3 (Pub. Act 91—928, § 5, eff. June 1, 2001) represents a substantive change in the law, which may not be applied retroactively to this case. See *People v. Balle*, 234 Ill. App. 3d 804, 815, 601 N.E.2d 788 (1992) (differentiating between procedural changes to statutes, which

may be applied retroactively, and substantive changes to statutes, which includes reducing the burden of proof, which may not be applied retroactively), citing *People v. Hart*, 214 Ill. App. 3d 512, 519, 573 N.E.2d 1288 (1991). Defendant's conviction must, therefore, be reversed.

The legislative debates for this amendment indicate that the legislators intended for the burglary section to have "the same language that currently exists for residential burglary." 91st Ill. Gen. Assem., House Proceedings, April 13, 2000, at 42 (statements of Representative Winkel). The amendment is a clarification of a logical inference that in order to commit residential burglary, one must commit burglary, which has identical elements except that the commission of residential burglary requires that the building entered must be a dwelling place. Nonetheless, the presumption of prospectivity cannot ordinarily be rebutted by statements of individual legislators during legislative debates that are contrary to that presumption. *Rivard*, 122 Ill. 2d at 309; *Fiorini*, 143 Ill. 2d at 335.

We also note that the legislative history of the bill indicates that it was passed by the General Assembly on April 13, 2000. The bill was returned by the Governor with an amendatory veto on July 6, 2000, and the legislature accepted the change on November 29, 2000. The bill was then certified by the Governor on December 15, 2000, but expressly did not become effective until June 1, 2001. Courts have held that the legislature's postponement of an effective date is direct evidence that a retroactive application was not intended. *People v. Ramsey*, 192 Ill. 2d 154, 183, 735 N.E.2d 533 (2000), citing *United States v. Brebner*, 951 F.2d 1017, 1022-23 (9th Cir. 1991) (noting that congressional intent against retroactivity was manifested by its express delaying of the effective date for six months); *Ocean & Atmospheric Science, Inc. v. Smyth Van Line, Inc.*, 446 F. Supp. 1158, 1159 (S.D. N.Y. 1978); *Twiss v. State Department of Treasury*, 124 N.J. 461, 468, 591 A.2d 913, 916 (1991). Similarly, in this case, we consider the postponement of the effective date as direct evidence that a retroactive application was not intended.

For all these reasons, we adopt the same holding as set forth by this court in the recent case of *Atkins*, 348 Ill. App. 3d at 130, decided well after this court's initial decision in the instant case, and reverse the defendant's conviction and sentence for the offense of burglary.

We further note that because the circuit court explicitly found that defendant was not guilty of residential burglary, the constitutional bar against double jeopardy prevents us from remanding this cause so that defendant may be tried on that charge. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 10; see also *People v. Gray*, 214 Ill. 2d 1,

6, 823 N.E.2d 555 (2005) (noting that the double jeopardy clauses of both the United States and the Illinois Constitutions "prohibit twice subjecting a defendant to 'jeopardy of life or limb' for the same offense" and specifically noting that the double jeopardy prohibition specifically bars, *inter alia*, "prosecution for the identical offense after an acquittal"), citing *People v. Sienkiewicz*, 208 Ill. 2d 1, 4, 802 N.E.2d 767 (2003). Thus, even if we found that the State proved defendant guilty of residential burglary in this, the circuit court's acquittal on this charge prohibits the State from retrying the defendant for residential burglary. See *Gray*, 214 Ill. 2d at 6.

## II. Sufficiency of the Evidence of Aggravated Battery

■ Defendant next asserts that he was not proven guilty of aggravated battery beyond a reasonable doubt because the alleged "club" used against Blackburn was a 30-inch-long, 2-inch-thick "stick," which was not brought to court or entered into evidence. He also contends that the injuries suffered by Blackburn were not consistent with the use of a deadly weapon. The State contends that there was sufficient evidence to show that the club or stick, regardless of its measurement, was used as a deadly weapon.

The indictment against defendant charged that he committed a battery, in that he intentionally or knowingly caused bodily harm to Randall Blackburn, while using a deadly weapon, other than by discharge of a firearm, to wit "with a club." Section 12—4 of the Criminal Code of 1961 provides that aggravated battery is committed when in "committing a battery, a person commits aggravated battery if he or she: (1) Uses a deadly weapon other than by the discharge of a firearm." 720 ILCS 5/12—4(b)(1) (West 2000).

A deadly weapon is not necessarily one manufactured for the special purpose of taking a life nor need it be of any particular size or description. *People v. Carter*, 410 Ill. 462, 465, 102 N.E.2d 312 (1951). It is an instrument that is used or may be used for the purpose of an offense and is capable of producing death. *Carter*, 410 Ill. at 465. "Some weapons are deadly *per se*; others, owing to the manner in which they are used, become deadly. A gun, pistol, or dirk-knife is itself deadly, while a small pocket knife, a cane, a riding whip, a club or baseball bat may be so used as to be a deadly weapon." *People v. Dwyer*, 324 Ill. 363, 364-65, 155 N.E. 316 (1927). Those instrumentalities not considered deadly *per se* may clearly become such by the manner in which they are used. *People v. Lee*, 46 Ill. App. 3d 343, 348, 360 N.E.2d 1173 (1977). When the character of the weapon is doubtful or the question depends upon the manner of its use, it is a question for the fact finder to determine from a description of the weapon, the

manner of its use, and the circumstances of the case. *Dwyer*, 324 Ill. at 365.

Here, the victim testified that defendant was swinging a "stick" that was 30 inches long and 2 inches thick. Though the object was not brought in for examination, another witness testified that it was approximately 30 inches long and one witness described it as approximately 42 inches long. Defendant was "wildly" swinging at both DeLeo and Blackburn and landed a blow on Blackburn's forehead, a vital part of anyone's body. In our view, a rational trier of fact could have concluded that the instrument used, while not by definition deadly *per se*, became a deadly weapon when used in the manner in which defendant used it here.

Defendant also claims he cannot be guilty of aggravated battery because the victim's injuries could not be properly regarded as caused by a deadly weapon. However, it is not necessary that more severe injuries be shown where we have found the weapon used to be a deadly weapon and that fact provides the aggravating factor which satisfies the statute. See 720 ILCS 5/12—4(b)(1) (West 2000). A criminal conviction will not be set aside on grounds of insufficient evidence, unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt. *People v. Pollock*, 202 Ill. 2d 189, 217, 780 N.E.2d 669 (2002). The appellate court, viewing all of the evidence in the light most favorable to the prosecution, determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Pollock*, 202 Ill. 2d at 217. Based on the record here, including the evidence of Blackburn's injury, the trial court had sufficient evidence to find defendant guilty of aggravated battery beyond a reasonable doubt predicated upon his use of a deadly weapon to commit a battery pursuant to the Criminal Code (720 ILCS 5/12—4(b)(1) (West 2000)).

### III. *Apprendi*

■ Defendant asserts that his sentences are unconstitutional because the Class X sentencing statute and the extended-term sentencing statute violate his right to due process and trial by jury by increasing the maximum sentence without notice or a jury finding upon proof beyond a reasonable doubt of the facts qualifying him for sentences beyond the prescribed sentencing range. See *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348. The determination of the constitutionality of a statute is a question of law; therefore, our review is *de novo*. *People v. Lathon*, 317 Ill. App. 3d 573, 578-79, 740 N.E.2d 377 (2000).

Relative to his aggravated battery conviction, that offense is a

Class 3 felony (720 ILCS 5/12—4(e) (West 2000)), for which the sentence shall be two to five years' imprisonment (730 ILCS 5/5—8—1(a)(6) (West 2000)). However, a defendant may be sentenced to an extended-term when he or she has been "previously convicted in Illinois *** of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction." 730 ILCS 5/5—5—3.2(b)(1) (West 2000). In the instant case, defendant's prior aggravated battery conviction made him eligible for an extended-term sentence.

Defendant's reliance on *Apprendi* is misplaced. *Apprendi* not only endorsed the recidivism exception, but provided various reasons for the exception, including the fact that procedural safeguards enhance the validity of a prior conviction, recidivism is not an essential element of the underlying criminal offense, and recidivism does not relate to the commission of the underlying offense. *Apprendi*, 530 U.S. at 494-96, 147 L. Ed. 2d at 457-58, 120 S. Ct. at 2365-66. These reasons support application of the *Apprendi* recidivism exception to the instant case.

Defendant also postulates that because the *Apprendi* decision calls into question whether *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), was correctly decided, this court should conclude that the reasoning of *Apprendi* applies to sentencing enhancement factors even where based on prior convictions, such as those present in the Class X sentencing provision of section 5—5—3(c)(8). We note that the *Apprendi* Court did recognize that while the defendant in *Almendarez-Torres* did not contest the validity of the *Almendarez-Torres* decision, it was *arguable* that the case was decided incorrectly. *People v. Smith*, 338 Ill. App. 3d 555, 559 (2003). However, *Apprendi* affirmed its opinion that prior convictions are an exception to the holding that any fact which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Smith*, 338 Ill. App. 3d at 559, citing *Apprendi*, 530 U.S. at 489-90, 147 L. Ed. 2d at 454-56, 120 S. Ct. at 2362-63.

In our view, defendant's enhanced sentence was based on prior convictions that were obtained through procedures satisfying the fair notice, reasonable doubt, jury trial, and due process guarantees. *Smith*, 338 Ill. App. 3d at 559, citing *Jones v. United States*, 526 U.S. 227, 249, 143 L. Ed. 2d 311, 329-30, 119 S. Ct. 1215, 1227 (1999) (a prior conviction, unlike any other factor used to enhance a sentence, must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees). We also note that defendant does not deny the existence of his prior felony conviction or

that the prior conviction was entered in a fair proceeding in which he was afforded due process.

Defendant next asserts that the burglary indictment gave him no notice that he qualified for sentencing as a Class X offender or qualified for an extended term. We hold that when a defendant's punishment is based on prior convictions, it need not be alleged in the charging document, submitted to the jury or proven beyond a reasonable doubt. *People v. Young*, 334 Ill. App. 3d 785, 794, 779 N.E.2d 293 (2002), citing *Lathon*, 317 Ill. App. 3d at 587.

Finally, the Illinois Appellate Court has repeatedly addressed and rejected defendant's contention that section 5—5—3(c)(8) is unconstitutional under *Apprendi*. *People v. Smith*, 338 Ill. App. 3d 555, 788 N.E.2d 1204 (2003) (section 5—5—3(c)(8) does not violate due process or trial by jury guarantees); *Lathon*, 317 Ill. App. 3d at 588 (section 5—5—3(c)(8) is constitutional under *Apprendi*); *People v. Lundy*, 334 Ill. App. 3d 819, 834, 779 N.E.2d 404 (2002) (section 5—5—3(c)(8) is constitutional under *Apprendi*); *Young*, 334 Ill. App. 3d at 794 (following *Lathon*); *People v. Wallace*, 331 Ill. App. 3d 822, 838, 772 N.E.2d 785 (2002) (following *Lathon*); *People v. Jones*, 328 Ill. App. 3d 233, 243, 764 N.E.2d 1232 (2002) (noting section 5—5—3(c)(8) does not violate *Apprendi*); *People v. Dunn*, 326 Ill. App. 3d 281, 289, 760 N.E.2d 511 (2001) (section 5—5—3(c)(8) is constitutional under *Apprendi*); *People v. Echols*, 325 Ill. App. 3d 515, 516-17, 758 N.E.2d 878 (2001) (following *Lathon*); *People v. Roberts*, 318 Ill. App. 3d 719, 729, 743 N.E.2d 1025 (2000) (recidivist provisions are not unconstitutional under *Apprendi*); *People v. Ramos*, 318 Ill. App. 3d 181, 193, 742 N.E.2d 763 (2000) (*Apprendi* exempts recidivist statutes); *People v. Watson*, 322 Ill. App. 3d 164, 167-68, 749 N.E.2d 1078 (2001) (agreeing with *Lathon*'s analysis); *People v. Jones*, 322 Ill. App. 3d 236, 243, 749 N.E.2d 466 (2001) (section 5—5—3(c)(8) does not violate *Apprendi*); *People v. Dixon*, 319 Ill. App. 3d 881, 886, 747 N.E.2d 1 (2001) (following *Lathon*); *People v. Givens*, 319 Ill. App. 3d 910, 913-14, 747 N.E.2d 436 (2001) (*Apprendi* does not render section 5—5—3(c)(8) unconstitutional).

We hold that the extended-term sentencing provision of section 5—5—3.2(b)(1) (730 ILCS 5/5—5—3.2(b)(1) (West 2000)), which allows discretionary extended-term sentencing based on prior convictions, is constitutional and does not violate defendant's due process or jury trial guarantees.

For the forgoing reasons, defendant's conviction for burglary is reversed and his conviction for aggravated battery is affirmed.

Affirmed in part and reversed in part.

GORDON and McBRIDE, JJ., concur.