2019 IL App (1st) 172851-U

No. 1-17-2851

Order filed December 26, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 16024 |
| | ) | |
| EARL CONNER, | ) | Honorable |
| | ) | Neera Lall Walsh, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State's evidence was sufficient to support defendant's conviction for aggravated battery with a deadly weapon.

¶ 2    Following a jury trial, defendant was convicted of aggravated battery by use of a deadly weapon other than by discharge of a firearm (720 ILCS 5/12-3.05(f)(1) (West 2016)) and sentenced to four years' imprisonment. On appeal, defendant contends that his conviction should

be reversed because the State's evidence was insufficient to prove his use of a "deadly weapon." For the following reasons, we affirm.

¶ 3     Defendant was charged with multiple offenses arising from an October 3, 2016 incident that involved Cameshia Martin. Count 1 (the only count at issue in this appeal) charged defendant with aggravated battery to Martin involving the use of a deadly weapon, a golf club, pursuant to section 12-3.05(f)(1) of the Criminal Code of 2012 (Code). See 720 ILCS 5/12-3.05(f)(1) (West 2016). Defendant was also charged with three counts of domestic battery against Martin (Counts 3, 4, and 6), as well as separate counts of aggravated battery and domestic battery against a child under the age of 13 years (Counts 2 and 5). The State nol-prossed Counts 2, 4, 5, and 6 and proceeded to trial only on Counts 1 and 3. Defendant elected to represent himself at the subsequent jury trial.

¶ 4     Martin testified at trial that she and defendant were in a relationship for four years and that they had a daughter, Zoey. As of October 3, 2016, defendant, Martin, and one-year-old Zoey lived together in an apartment. On that day, Martin took a bus to her workplace. When she arrived, her supervisor informed her that, in fact, Martin was not scheduled to work that day. Because she had the day off, Martin went to a car dealership, as she was interested in buying a car. Martin did not purchase a car that day. However, she brought paperwork from the dealership to "show [defendant] I wasn't lying about where I was at." Martin then took a bus home. On the way home, she texted defendant, who asked where she had been. After exchanging messages with defendant, Martin "had a feeling that * * * it was going to be an argument once I got home." Before returning home, she picked up Zoey from another location. Martin and Zoey returned to their apartment and were watching television in the bedroom when defendant arrived.

¶ 5    When defendant came home, he asked to see the paperwork from the dealership. Martin showed it to him, but "he still didn't believe [her] that [she] was at a car dealership." Defendant threw the paperwork on the ground and told Martin that she was lying. After Martin insisted that she was telling the truth, defendant struck her on the left side of her face. Martin testified that Zoey was sitting on the bed next to her at that time. Martin attempted to walk out of the bedroom, but defendant grabbed her hair and threw her to the ground. While she was on the ground, defendant hit her with his closed fist and kicked her. He then walked out of the room. Martin stayed on the floor of the bedroom, crying and "distraught."

¶ 6    Defendant re-entered the room and again accused Martin of lying. At one point, defendant grabbed Zoey "by the arm and kind of slung her across the bed." Defendant picked up a golf club that "he kept in the closet." Martin described it as a "metal golf club" with "a ball at the end of it." She asked defendant not to hit her, but he still hit her with the club. She testified that defendant held the golf club "as if he was playing baseball" when he struck her on the left-hand side of her back. After defendant hit her with the golf club a second time, Martin grabbed the club and was able to push defendant away. When defendant walked out of the bedroom, Martin grabbed her cell phone, exited the bedroom and went downstairs toward the front door of the apartment building. As she was going downstairs, defendant grabbed her by the hair. Martin eventually broke free from defendant and ran out of the apartment building. She knew that Zoey was still in the building, but explained that she left without her because at that time, she thought that if she did not "get out of [t]here" she would not be able to "save" Zoey. Martin dialed 911 and shortly thereafter flagged down a police car. She told police what had happened, and later

spoke to paramedics who arrived at the scene. Martin was transported to a hospital, where she was reunited with Zoey a short time later.

¶ 7    Martin identified two photographs (People's exhibits no. 1 and 2), which she testified accurately depicted a "red bruise" on her back from being struck with the golf club. The photographs were admitted and published to the jury. Martin also identified a recording of her 911 call, which was published.

¶ 8    Chicago police officer Paschal testified that he and his partner were in a marked police vehicle when they were "flagged down" by Martin, who was "visibly distraught and crying." After speaking with Martin, Paschal requested an ambulance and radioed for his sergeant, Christopher Vacek, to come to the scene. Paschal testified that Vacek arrived and spoke with Martin. Vacek then entered the apartment building where Martin said she lived. Because Vacek was initially unable to gain access to the apartment, the police contacted the Chicago Fire Department. Members of the fire department, together with Paschal, Vacek, and other police officers, went to the apartment. After Vacek "bang[ed] on the door" with no response, the fire department forced the apartment door open. Paschal and Vacek were the first two officers to enter the apartment. Inside, Paschal found defendant holding a baby. Defendant was then taken into custody.

¶ 9    Paschal testified that, to his knowledge, police did not recover a golf club from the apartment. He acknowledged that he searched the bedroom and the living room but did not check any other rooms of the residence.

¶ 10   The jury found defendant guilty of aggravated battery with a deadly weapon (Count 1) and domestic battery (Count 3). The court merged the counts and sentenced defendant to four years' imprisonment for aggravated battery with a deadly weapon.

¶ 11   On appeal, defendant challenges the sufficiency of the evidence supporting his conviction for aggravated battery with a deadly weapon. "When reviewing a challenge to the sufficiency of the evidence, this court considers whether, viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). "On review, all reasonable inferences from the evidence are drawn in favor of the State. [Citations.] The reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact on questions involving the weight of the evidence, conflicts in the testimony, or the credibility of witnesses. [Citation.]" *People v. Corral*, 2019 IL App (1st) 171501, ¶ 71.

¶ 12   "Testimony may be found insufficient * * * only where the evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Id.* ¶ 72. "[T]he fact finder's decision to accept testimony is entitled to great deference but is not conclusive and does not bind the reviewing court. [Citation.] Only where the evidence is so improbable or unsatisfactory as to create reasonable doubt of the defendant's guilt will a conviction be set aside. [Citation.]" *Id.*

¶ 13   In order to sustain defendant's conviction for aggravated battery, as charged in this case, the State was required to prove beyond a reasonable doubt that, in committing a battery, defendant "[u]se[d] a deadly weapon other than by discharge of a firearm." 720 ILCS 5/12-

3.05(f)(1) (West 2016). In order to establish battery, the State was required to prove beyond a reasonable doubt that defendant "knowingly without legal justification by any means (1) cause[d] bodily harm to an individual or (2) ma[de] physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a) (West 2016).

¶ 14    In this court, defendant does not dispute that he committed a battery. Rather, he argues that the evidence was insufficient to establish that, in doing so, he used a deadly weapon, as required to sustain his aggravated battery conviction. He emphasizes that the golf club described by Martin was not recovered and argues that, without it, the State could not prove the use of a deadly weapon. Absent recovery of the golf club, he urges that "it is highly improbable and defies belief that a golf club was in fact used." He acknowledges that the photographs admitted into evidence "depict a red bruise" on Martin's back, but he argues "there is nothing particularly remarkable about the bruise to indicate that it was made by a golf club." Defendant otherwise suggests that, even if a golf club was used, Martin's description of it was not sufficient for the jury to conclude that it constituted a "deadly weapon."

¶ 15    The aggravated battery statute does not define "deadly weapon," but this court has held that "[a] deadly weapon is defined as any 'instrument that is used or may be used for the purpose of an offense and is capable of producing death.' " *People v. Mandarino*, 2013 IL App (1st) 111772, ¶ 68 (quoting *People v. Blanks*, 361 Ill. App. 3d 400, 411 (2005)). In *Blanks*, our court further explained:

> " 'Some weapons are deadly *per se*; others, owing to the manner in
> which they are used, become deadly. A gun, pistol, or dirk-knife is
> itself deadly, while a small pocket knife, a cane, a riding whip, a

> club or baseball bat may be so used as to be a deadly weapon.'
>
> *People v. Dwyer*, 324 Ill. 363, 364-65 (1927). Those
> instrumentalities not considered deadly *per se* may clearly become
> such by the manner in which they are used. [Citation.] When the
> character of the weapon is doubtful or the question depends upon
> the manner of its use, it is a question for the fact finder to
> determine from a description of the weapon, the manner of its use,
> and the circumstances of the case. [Citation.]" *Blanks*, 361 Ill.
> App. 3d at 411-12.

"We review the evidence of the use of a deadly weapon in the light most favorable to the State, to determine whether any rational trier of fact could have found the element proven beyond a reasonable doubt. [Citation.]" *Mandarino*, 2013 IL App (1st) 111772, ¶ 68.

¶ 16    We initially note that, in setting forth his argument, defendant does not dispute that, in general, a golf club can be used in a way that may cause death or serious bodily injury. See *People v. J.O.,* 269 Ill. App. 3d 287, 291 (1994) ("Reasonable people know that a beating with a golf club and baseball bats can cause death and/or great bodily injury."). Defendant also does not suggest that, as a general matter, proof of a "deadly weapon" requires the actual recovery of that weapon. Our court has upheld aggravated battery convictions even where the "deadly weapon" has not been recovered. See, *e.g., People v. Marston*, 353 Ill. App. 3d 513, 521-22 (2004) (rejecting argument that State failed to prove that defendant used a pole as a deadly weapon where, although the State did not introduce the pole, multiple witnesses described it and the jury saw photographs of the victim's injuries). Instead, defendant argues that, in this case, without the

recovered golf club, the remaining evidence was insufficient to prove that Martin was, in fact, hit with a golf club.

¶ 17    We conclude that, after viewing the evidence in the light most favorable to the State, a rational jury could find that the State proved beyond a reasonable doubt that defendant used a deadly weapon; *i.e.*, the golf club described by Martin. Notwithstanding the failure to recover the golf club from the scene, we cannot say that the remaining evidence—Martin's testimony and the photographic evidence—was "so improbable or unsatisfactory as to create reasonable doubt." *Corral*, 2019 IL App (1st) 171501, ¶ 72. Rather, the jury could, and apparently did, credit Martin's testimony—including her statement that defendant repeatedly swung a metal golf club at her "as if he was playing baseball"—to find that defendant used the golf club as a deadly weapon. Martin also testified that she fled the building without Zoey because she believed it was the only way she could save her. We will not reweigh that testimony to second-guess the jury's credibility findings, which are entitled to great deference. Further, the jury could reasonably find that Martin's testimony was corroborated by the photographs introduced at trial, which (as defendant concedes) showed a bruise on her back. Therefore, the evidence presented was sufficient to permit a rational jury to find beyond a reasonable doubt that defendant struck Martin with a golf club, constituting the use of a "deadly weapon" within the meaning of the aggravated battery statute. 720 ILCS 5/12-3.05(f)(1) (West 2016). In other words, the State's evidence was not so improbable or unsatisfactory as to create reasonable doubt of defendant's guilt.

¶ 18    In reaching this conclusion, we reject defendant's argument that the photographs merely show a "garden variety" bruise, rather than one that could have been inflicted by a golf club. Defendant essentially asks us to reweigh the photographic evidence and substitute our judgment

for that of the jury, which we cannot do. A jury could rationally conclude that the photographs of Martin's injury were consistent with her testimony about being hit with a golf club.

¶ 19    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 20    Affirmed.