United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 26, 2006**

Charles R. Fulbruge III
Clerk

REVISED OCTOBER 17, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-10451

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ANSELMO VELASCO, also known as Antonio Rodriguez, also known as
Charro Velasco

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, GARWOOD, and JOLLY, Circuit Judges.

KING, Circuit Judge:

Defendant-appellant Anselmo Velasco pleaded guilty to
illegally reentering the country after having been deported.  On
appeal, he challenges the imposition of a sixteen-level sentence
enhancement under U.S. SENTENCING GUIDELINES MANUAL § 2L1.2.  For the
following reasons, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On October 18, 2004, defendant-appellant Anselmo Velasco, a
citizen of Mexico, was arrested by the United States Border

-1-

Patrol in Anson, Texas.  Velasco was charged with the offense of illegal reentry after deportation in violation of 8 U.S.C. § 1326.[1]  On January 6, 2005, Velasco pleaded guilty to the illegal reentry charge.

Velasco was sentenced under the 2004 version of the United States Sentencing Guidelines ("the Sentencing Guidelines") on March 25, 2005.  The sentencing guideline applicable to a violation of § 1326 calls for a base offense level of eight. U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(a) (2004).  This base

---

[1]  Velasco was deported from the United States on July 10, 1998. He did not have permission from the Attorney General or the Secretary of the Department of Homeland Security to reenter the United States.  Section 1326 reads in relevant part:

>          (a) Subject to subsection (b) of this section, any alien who –
>                (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>                (2) enters, attempts to enter, or is at any time found in, the United States, unless . . . the Attorney General has expressly consented to such alien's reapplying for admission . . .
>          shall be fined under Title 18, or imprisoned not more than 2 years, or both.
>          (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection –
>                . . .
>                (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both.
>                . . .

8 U.S.C. § 1326.

offense level is increased by sixteen levels if the defendant was previously deported after a conviction for a "crime of violence." Id. § 2L1.2(b)(1)(A). The presentence report ("the PSR") prepared by the United States Probation Office recommended a base offense level of eight, an increase of sixteen levels because of Velasco's 1996 Illinois conviction for aggravated battery,[2] which the Probation Office classified as a "crime of violence," and a decrease in three levels for Velasco's acceptance of responsibility, for a total offense level of twenty-one.

Velasco objected to the characterization of his 1996 Illinois conviction for aggravated battery as a "crime of violence" for sentence-enhancement purposes. The district court overruled the objection and adopted the PSR's characterization of Velasco's Illinois aggravated battery conviction as a "crime of violence," resulting in an offense level of twenty-one. On March 25, 2005, the district court sentenced Velasco to fifty-seven months of imprisonment, three years of supervised release, and a

---

[2] The PSR initially characterized a separate prior offense committed by Velasco as a "drug trafficking offense for which the sentence imposed exceeded thirteen months," which under the Sentencing Guidelines qualifies in the alternative for the same sixteen-level enhancement as a "crime of violence." Velasco objected to the characterization of his prior drug conviction. The government amended the PSR to reflect that the prior offense was for possession of a controlled substance rather than for the manufacture and delivery of cocaine, which removed the drug-related offense from consideration as an offense qualifying for a sixteen-level enhancement. The district court recognized the amendment as proper during sentencing and considered only the aggravated battery conviction as a basis for sixteen-level enhancement.

special assessment of $100.

## II. DISCUSSION

Velasco appeals his sentence on the ground that the district court improperly characterized his conviction for aggravated battery as a "crime of violence" and thus improperly enhanced his sentence. He also appeals the constitutionality of treating prior convictions as sentencing factors rather than offense elements under 8 U.S.C. § 1326(b). We review a district court's application and interpretation of the Sentencing Guidelines de novo. United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005) (per curiam). Guideline commentary "is given controlling weight if it is not plainly erroneous or inconsistent with the guidelines." United States v. Urias-Escobar, 281 F.3d 165, 167 (5th Cir. 2002) (citing Stinson v. United States, 508 U.S. 36, 42-45 (1993)). We review the constitutionality of federal statutes de novo. United States v. Bredimus, 352 F.3d 200, 203 (5th Cir. 2003).

## A.    Sentence Enhancement

Velasco was sentenced under § 2L1.2 of the 2004 version of the Sentencing Guidelines.[3] Section 2L1.2(b)(1)(A) calls for a

---

[3] The PSR relied on the November 1, 2004 version of the Sentencing Guidelines. Application of the 2004 Sentencing Guidelines is proper under U.S. SENTENCING GUIDELINES MANUAL § 1B1.11 and does not implicate the Ex Post Facto Clause of the U.S. Constitution because the 2004 sentencing provision at issue is identical to the 2003 sentencing provision in effect when Velasco committed the offense of illegal reentry on October 18, 2004.

sixteen-level enhancement if the defendant previously has been convicted of a "crime of violence."  The commentary to § 2L1.2 defines the term "crime of violence" as follows:

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n.1(B)(iii)(2004).

An offense can be a "crime of violence" either because it fits within the enumerated list of qualifying offenses or because it has as an element the use of force.  United States v. Rayo-Valdez, 302 F.3d 314, 316-19 (5th Cir. 2002).  The district court enhanced Velasco's sentence upon finding that Velasco was convicted under a specific disjunctive portion of the Illinois aggravated battery statute and that this disjunctive portion had as an element the use of physical force.  Thus, the question before us is whether the district court properly held that Velasco's Illinois aggravated battery conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another."[4]

---

[4]  The government does not argue that Velasco's aggravated battery conviction constitutes an enumerated crime of violence for sentence-enhancement purposes.  Although we resolve this case under the "use of physical force" definition of a crime of violence, we note that Velasco's conviction for aggravated

In <u>United States v. Vargas-Duran</u>, this court, sitting en banc, held that for a non-enumerated offense to "have as an element" the use, attempted use, or threatened use of physical force necessary for a sentence enhancement under § 2L1.2, the use

---

battery is sufficiently similar to the Model Penal Code's definition of aggravated assault to qualify as the enumerated offense of aggravated assault.

    The Sentencing Guidelines do not define what constitutes an "aggravated assault." Where an offense is not defined by the Sentencing Guidelines, this court applies a "common sense approach," defining the enumerated crime by its "generic, contemporary meaning." <u>United States v. Izaguirre-Flores</u>, 405 F.3d 270, 275 & n.16 (5th Cir. 2005) (citing <u>United States v. Dominguez-Ochoa</u>, 386 F.3d 639, 642-43 (5th Cir. 2004)). Under the categorical approach set forth by the Supreme Court in <u>Taylor v. United States</u>, 495 U.S. 575, 577-78 (1990), we look to sources such as the Model Penal Code and legal treatises and dictionaries to "evaluat[e] the correspondence between [the] generic contemporary meaning and the statutory definition of the prior offense." <u>United States v. Torres-Diaz</u>, 438 F.3d 529, 536 (5th Cir. 2006).

    Under the Model Penal Code, a person is guilty of aggravated assault if he:

> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

MODEL PENAL CODE § 211.1(2).

    In examining Velasco's indictment and the Illinois aggravated battery statute, we can discern that Velasco was convicted under § 12-4(b)(1) of the Illinois aggravated battery statute in that he committed a battery — specifically, by intentionally causing bodily harm to another — using a deadly weapon. 720 IL. COMP. STAT. 5/12-4(b)(1) (1995). Comparing the Illinois aggravated battery statutory elements to those of the Model Penal Code, they correspond to § 211.1(2)(b). In particular, the comparison reveals that the two definitions are identical in regard to the required elements of mens rea, causation of bodily harm, and use of a deadly weapon.

of physical force must be a fact that is necessary for the prosecution to secure a conviction. 356 F.3d 598, 605 (5th Cir. 2004) (en banc) (noting that "an element is a 'constituent part of a claim that must be proved for the claim to succeed'" (quoting BLACK'S LAW DICTIONARY 538 (7th ed. 1999)). If any set of facts would secure a conviction under the statute without proof of the intentional use of force against the person of another, then the offense cannot be characterized as a crime of violence for sentence-enhancement purposes. Id.

When determining whether a prior conviction qualifies as a "crime of violence" under the Sentencing Guidelines, this court is bound by the categorical approach of Taylor v. United States, 495 U.S. 575, 577-78 (1990). See also Shepard v. United States, 544 U.S. 13, 19-20 (2005) (holding that Taylor's categorical approach applies equally to convictions following guilty pleas and jury verdicts). Taylor requires us to consider only the statutory definition of the offense charged, rather than the defendant's actual conduct underlying the offense, to determine whether the offense contains an element involving the use of force. See, e.g., United States v. Calderon-Pena, 383 F.3d 254, 257 (5th Cir. 2004) (en banc) (per curiam), cert denied 543 U.S. 1076 (2005); United States v. Gracia-Cantu, 302 F.3d 308, 312-13 (5th Cir. 2002). If there are several methods of committing a crime under a statute, each method of violating the statute must qualify as a "crime of violence," without inquiry into the

-7-

defendant's actual use of force.  <u>Taylor</u>, 495 U.S. at 577-78.

However, if an offense statute contains disjunctive statutory

alternatives under which a defendant may be convicted, a

sentencing court may look to the offense conduct described in the

indictment or jury instructions for the limited purpose of

determining which of the disjunctive alternatives a defendant's

conviction satisfies.  <u>Calderon-Pena</u>, 383 F.3d at 258.  If the

precise disjunctive statutory alternative can be determined from

the indictment, then the court may look to that particular

provision to determine whether the use of force is a required

element of the offense.  <u>Id.</u> at 258-59.

Velasco was convicted under the Illinois aggravated battery

statute.  720 ILL. COMP. STAT. 5/12-4 (1995).[5]  This court twice

---

[5]  Section 12-4 details a number of specific ways in which
aggravated battery can be committed.  Relevant portions of the
statute are listed here to illustrate its disjunctive nature and
the range of ways in which aggravated battery can be committed:

> (a) A person who, in committing a battery,
> intentionally or knowingly causes great bodily
> harm, or permanent disability or disfigurement
> commits aggravated battery.
> (b) In committing a battery, a person commits
> aggravated battery if he or she:
> > (1) Uses a deadly weapon other than
> > by the discharge of a firearm;
> > (2) Is hooded, robed or masked, in
> > such manner to conceal his identity;
> > . . .
> (c) A person who administers to an individual
> or causes him to take, without his consent or
> by threat or deception, and for other than
> medical purposes, any intoxicating, poisonous,
> stupefying, narcotic or anesthetic substance
> commits aggravated battery;
> (d) A person who knowingly gives to another

previously has examined this statute to determine whether it contains an element requiring the prosecution to prove that the defendant engaged in the use of physical force.  United States v. Aguilar-Delgado, 120 F. App'x 522 (5th Cir. 2004) (unpublished); United States v. Gomez-Vargas, 111 F. App'x 741 (5th Cir. 2004) (per curiam) (unpublished).  In each prior case we determined that the Illinois aggravated battery statute provides for the commission of the offense of aggravated battery in a number of different ways, some of which do not require the use of physical force against a person.[6]  Aguilar-Delgado, 120 F. App'x at 523; Gomez-Vargas, 111 F. App'x at 743.  In both cases the records on appeal did not contain the indictments for the Illinois convictions and the court was unable to discern under which of the disjunctive statutory elements the defendants were charged and convicted.  See, e.g., Aguilar-Delgado, 120 F. App'x at 523 ("The record in this case does not include the indictment for the Illinois conviction and we are unable to 'pare down' the statute

---

person any food that contains any substance or object that is intended to cause physical injury if eaten, commits aggravated battery.
720 ILL. COMP. STAT. 5/12-4 (1995).

[6]  For example, use of a poison, as proscribed by § 12-4(c), does not require the use of physical force:
(c) A person who administers to an individual or causes him to take, without his consent or by threat or deception, and for other than medical purposes, any intoxicating, poisonous, stupefying, narcotic or anesthetic substance commits aggravated battery.
720 ILL. COMP. STAT. 5/12-4(c) (1995).

to determine which of its disjunctive elements were used to charge and convict [the defendant].")  Accordingly, in each case we held that the relevant conviction under the Illinois aggravated battery offense statute could not be properly characterized as a "crime of violence" because the use of physical force could not be shown to be a required element underlying the conviction.

Velasco relies on our decisions in <u>Aguilar-Delgado</u> and <u>Gomez-Vargas</u> to argue that an Illinois aggravated battery conviction categorically does not qualify as a "crime of violence" for sentence-enhancement purposes.  However, our prior examinations of Illinois's aggravated battery statute are not dispositive of the present case.  In contrast to the records on appeal in <u>Gomez-Vargas</u> and <u>Aguilar-Delgado</u>, Velasco's indictment for aggravated battery is included in the record and identifies the disjunctive portion of the aggravated battery statute under which Velasco was charged and convicted.  As such, we again turn to the Illinois aggravated battery statute, with a more narrow inquiry into whether the disjunctive portion under which Velasco was convicted requires as an element the use of physical force. We conclude that it does.

Under Illinois law, "aggravated battery" occurs when "[a] person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement."  720 ILL. COMP. STAT. 5/12-4(a) (1995).  The

-10-

statute provides, in subsections (b) through (d), a number of specific ways in which an aggravated battery can be committed. Velasco's indictment for aggravated battery indicates that he was charged under § 12-4(b)(1) of the Illinois aggravated battery statute:

> ANSELMO VELASCO committed the offense of AGGRAVATED BATTERY in that HE, INTENTIONALLY OR KNOWINGLY WITHOUT LEGAL JUSTIFICATION CAUSED BODILY HARM TO BRAULIO MATA WHILE USING A DEADLY WEAPON, TO WIT: A KNIFE IN VIOLATION, OF CHAPTER 720, ACT 5, SECTION 12-4(B)(1).

Section 12-4(b)(1) provides that "[i]n committing a battery,[7] a person commits aggravated battery if he or she: (1) uses a deadly weapon other than by the discharge of a firearm." 720 ILL. COMP. STAT. 5/12-4 (1995). Beyond explicitly naming the portion of the aggravated battery statute under which Velasco was convicted, the indictment's description of Velasco's conduct — "caused bodily harm while ... using a deadly weapon ... a knife" — corresponds to the offense proscribed by § 12-4(b)(1). As a result, we look only to § 12-4(b)(1) to determine whether the use of force is a required element of Velasco's conviction for aggravated battery.

There is only one means of conviction under § 12-4(b)(1), which is to prove that the defendant actually "used" a deadly weapon. Under Illinois law, a deadly weapon is "an instrument

---

[7] A person commits battery under Illinois law "if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual. 720 ILL. COMP. STAT. 5/12-3 (1995).

that is used or may be used for the purpose of an offense and is capable of producing death." <u>Illinois v. Blanks</u>, 845 N.E.2d 1, 12 (Ill. App. Ct. 2005). Accordingly, in order to convict Velasco of aggravated battery under § 12-4(b)(1), the government was required to prove that Velasco "used" a deadly weapon for the purpose of the offense of battery, which in this case was to cause bodily harm.[8]

We conclude that § 12-4(b)(1) does indeed require proof of the element of the use of physical force against the person of another. In making this determination we note that it is critical that the statute requires the actual "use" of the weapon to commit the offense. In <u>United States v. Diaz-Diaz</u>, we held that a criminal offense involving the mere possession of a deadly weapon is not a "crime of violence" because the offense required nothing more than actually carrying a weapon. 327 F.3d 410, 414 (5th Cir. 2003) (holding that the crime of "knowing possession" of a short-barrel shotgun was complete without the use of any physical force against the person or the property of another). We distinguish, however, the "use" of a deadly weapon from mere possession in regard to the relationship between the "use" of a weapon and physical force. In order to "use" a weapon to cause

---

[8] Under the Illinois general battery statute, battery occurs when one either intentionally causes bodily harm to another or makes physical contact of an insulting or provoking nature. 720 ILL. COMP. STAT. 5/12-3 (1995). Velasco's indictment indicates that he was charged under the first alternative — intentionally causing bodily harm to another.

-12-

bodily harm, one must, at the very least, threaten the use of physical force.

This decision is consistent with our case law. In United States v. Guevara, we held that weapons of mass destruction are instruments of physical force, and as such, a conviction for threatening to use a weapon of mass destruction (anthrax) qualified as a crime of violence for sentence-enhancement purposes.[9] 408 F.3d 252, 259 (5th Cir. 2005). Similarly, a deadly weapon, in that it is capable of producing death, is an instrument of physical force. Other circuits have also concluded that the use of a deadly weapon to commit aggravated battery necessarily involves the use of physical force for the purpose of sentence enhancement under § 2L1.2(b)(1)(A). In United States v. Treto-Martinez, the court examined a Kansas aggravated battery statute and reasoned that the use of a deadly weapon whereby great bodily harm, disfigurement, or death can be inflicted has as a required element the threatened use of physical force, and therefore, sixteen-level enhancement as a "crime of violence" was proper. 421 F.3d 1156, 1160 (10th Cir. 2005).

We conclude that the "use" of a deadly weapon to cause

---

[9] Guevara construed a "crime of violence" under U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a)(1) and we are mindful that the Sentencing Guidelines vary across subsections regarding the offenses that qualify as "crimes of violence." See United States v. Charles, 301 F.3d 309, 311-12 (5th Cir. 2002). However, we note the corresponding definition of "crime of violence" in § 4B1.2(a)(1) is identical to that contained in § 2L1.2 cmt. n.1(B)(iii). As such, Guevara is relevant.

bodily harm — as expressly charged in Velasco's indictment and required by § 12-4(b)(1) — involves the element of the use of destructive physical force against the victim's person.  As a result, we hold that a conviction under § 12-4(b)(1) of the Illinois aggravated battery statute is a "crime of violence" for sentence-enhancement purposes.

**B.   Constitutionality of 8 U.S.C. § 1326(b)**

Title 8 U.S.C. § 1326(a) makes it a crime, punishable by up to two years' imprisonment, for an alien to reenter the country without permission after having previously been removed.  Section 1326(b)(1)-(2) provides that aliens whose prior removal followed a conviction of certain crimes may be imprisoned for substantially longer terms.  In <u>Almendarez-Torres v. United States</u>, the Supreme Court held that § 1326(b) set forth sentencing factors rather than separate offenses such that an indictment in an illegal reentry case need not allege a defendant's prior conviction, and that the statute was constitutional.  523 U.S. 224, 247 (1998).

Velasco contends that 8 U.S.C. § 1326(b) is unconstitutional in light of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 489-90 (2000), in which the Supreme Court held that facts that increase a sentence beyond the statutory maximum must as a general matter be found by a jury.  But <u>Apprendi</u> explicitly refrained from overruling <u>Almendarez-Torres</u>, and this circuit has consistently

-14-

rejected Velasco's position, stating that it is for the Supreme Court to overrule <u>Almendarez-Torres</u>.  <u>See, e.g.</u>, <u>United States v. Sarmiento-Funes</u>, 374 F.3d 336, 345-46 (5th Cir. 2004).  Velasco concedes that the issue is foreclosed by circuit precedent, and he presents the issue solely to preserve it for possible further review.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Velasco's judgment of conviction and sentence.