# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2013

No. 12-41108

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BULFRANO ALONZO–GARCIA,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:12-CR-292-1

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Bulfrano Alonzo–Garcia ("Alonzo–Garcia") pleaded guilty to illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) and was sentenced to thirty months of imprisonment. Alonzo–Garcia appeals his sentence, arguing that the district court incorrectly applied a sixteen-level "crime of violence" enhancement based on his prior Florida conviction for aggravated assault, and that the district court used the wrong statutory maximum in computing his sentence. Because Alonzo–Garcia's Florida conviction required at least the threatened use of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-41108

physical force and because Alonzo–Garcia cannot establish that the plain error elements are satisfied regarding the statutory maximum, we AFFIRM but REMAND to the district court for reformation of the judgment.

I.

On April 25, 2012, a grand jury charged Alonzo–Garcia with illegal reentry following deportation in violation of 8 U.S.C. § 1326(a). Alonzo–Garcia pleaded guilty to the indictment in an arraignment before a magistrate judge. At the arraignment, the magistrate judge advised Alonzo–Garcia that he was subject to a maximum sentence of imprisonment of twenty years. The district court subsequently accepted Alonzo–Garcia's guilty plea and ordered the preparation of a pre-sentence investigation report ("PSR").

The PSR recommended a sixteen-offense-level increase pursuant to § 2L1.2(b)(1)(A)(ii) of the Guidelines because Alonzo–Garcia's 2011 Florida felony conviction for aggravated assault was a crime of violence. According to the PSR, this increase, combined with a base offense level of eight and a three-level reduction for acceptance of responsibility, gave Alonzo–Garcia a total offense level of twenty-one. With the addition of five criminal history points, Alonzo–Garcia's criminal history category was III, resulting in an imprisonment range of forty-six to fifty-seven months.

In stating Alonzo–Garcia's maximum term of imprisonment, the PSR was inconsistent. On the one hand, the first page of the PSR showed that pursuant to § 1326(b), Alonzo–Garcia was subject to a twenty-year maximum term of imprisonment. Presumably this was a reference to the twenty-year maximum in § 1326(b)(2). On the other hand, paragraph forty-two of the PSR, stated that pursuant to § 1326(b)(1) Alonzo–Garcia's maximum term of imprisonment was ten years.

At sentencing, neither the parties nor the district court discussed the potential maximum term of Alonzo–Garcia's imprisonment and the conflicting

information provided in the PSR.  Instead, the sentencing hearing focused on PSR's application of the sixteen-level enhancement.  Alonzo–Garcia objected to the sixteen-level enhancement, arguing, as he does before this court, that his prior Florida conviction for aggravated assault did not constitute a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The district court overruled this objection but granted Alonzo–Garcia's request for a downward departure from the Guidelines and sentenced him to thirty months of imprisonment.  Ultimately, however, the district court's written judgment reflected that Alonzo–Garcia was sentenced under the twenty-year maximum term of imprisonment imposed by § 1326(b)(2).

## II.

We first address whether Alonzo–Garcia's 2011 Florida conviction for aggravated assault qualifies as a crime of violence, as that term is defined in the Guidelines.  Characterization of a prior offense as a crime of violence is a question of law that this court reviews *de novo*.  *United States v. Rodriguez*, 711 F.3d 541, 548 (5th Cir. 2013) (en banc).  "When determining whether a prior conviction qualifies as a crime of violence under the Guidelines, we [use] the categorical approach that the Supreme Court first outlined in *Taylor v. United States*, 495 U.S. 575 (1990)."  *Id.* at 549.  "Under the categorical approach, the analysis is grounded in the elements of the statute of conviction rather than a defendant's specific conduct."  *Id.*; *see also United States v. Calderon–Pena*, 383 F.3d 254, 257 (5th Cir. 2004) (en banc).  Commentary in the Guidelines "is given controlling weight if it is not plainly erroneous or inconsistent with the [G]uidelines."  *United States v. Velasco*, 465 F.3d 633, 637 (5th Cir. 2006) (quoting *United States v. Urias–Escobar*, 281 F.3d 165, 167 (5th Cir. 2002)).

Under the Guidelines, a defendant convicted of illegal reentry is subject to a sixteen-level sentence enhancement if he was convicted of a crime of violence prior to his removal or deportation.  U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The Guidelines

commentary—specifically Application Note 1(B)(iii) to § 2L1.2—further defines "crime of violence" in two ways: (1) as one of several enumerated offense categories, including "aggravated assault," and (2) in a residual clause as "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."

Alonzo–Garcia argues that his Florida conviction does not fall under either of these definitions and that, therefore, the district court incorrectly imposed a sixteen-level sentence enhancement on that basis. We disagree and hold that Alonzo–Garcia's Florida conviction qualifies as a crime of violence under the residual clause of Application Note 1(B)(iii) to § 2L1.2 of the Guidelines. Accordingly, we need not decide whether Alonzo–Garcia's conviction qualifies as the enumerated offense of "aggravated assault."

The residual clause defines "crime of violence" as any offense that has "as an element the use, attempted use, or *threatened use of physical force* against the person of another." U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii) (emphasis added). Thus, to determine if Alonzo–Garcia's Florida conviction qualifies as a crime of violence under the residual clause, we must decide if Florida's aggravated assault statute has a physical force element. *See United States v. Flores–Gallo*, 625 F.3d 819, 824 (5th Cir. 2010) (holding that the Kansas aggravated battery statute has as an element at least the threatened use physical force). Because each Florida aggravated assault conviction requires proof of an assault—which in turn requires a threat "to do violence" to another person—we conclude that it does.

Florida's aggravated assault statute prohibits "an assault: (a) with a deadly weapon without intent to kill; or (b) with an intent to commit a felony." FLA. STAT. § 784.021(1). Critically for this case, the state court record does not

indicate under which of these two subsection Alonzo–Garcia was convicted.[1] As a result, we must look for a physical force element in each subsection to determine if Alonzo–Garcia's conviction qualifies as a crime of violence. *See United States v. Gonzalez–Ramirez*, 477 F.3d 310, 315–16 (5th Cir. 2007) ("Absent clarification regarding the offense and conviction, this court must consider the entire definition of [crime] . . . . including the alternative bases for conviction . . . ."). Here, each subsection of Florida's aggravated assault statute contains a common element: both the "deadly weapon" subsection and the "with intent to commit a felony" subsection require proof of an assault. FLA. STAT. § 784.021(1). Accordingly, we look to Florida's definition of "assault" to determine if it requires the use of physical force.

Florida's assault statute defines "assault" as "an intentional, unlawful threat by word or act *to do violence* to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." *Id.* § 784.011(1) (emphasis added). Thus, whether a conviction under Florida's aggravated assault statute qualifies as a crime of violence boils down to whether "an intentional, unlawful threat by word or act to do violence" requires a threat of physical force.

---

[1] In state court, Alonzo–Garcia was charged with aggravated battery but pleaded *nolo contendere* to the lesser charge of aggravated assault. Although the facts underlying his original charge for aggravated battery might suggest Alonzo–Garcia was convicted under the "deadly weapon" subsection of § 784.021(1), both parties agree here that we cannot utilize a charging document to which Alonzo–Garcia did not plead to narrow the statutory alternatives in this case. We explained in *United States v. Bonilla–Mungia*:

> If a statute contains multiple, disjunctive subsections, courts may look beyond the statute to certain "conclusive records made or used in adjudicating guilt" in order to determine which particular statutory alternative applies to the defendant's conviction. *See United States v. Garza–Lopez*, 410 F.3d 268, 274 (5th Cir. 2005) (discussing the parameters of our review under *Taylor*). These records are generally limited to the "charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

422 F.3d 316, 320 (5th Cir. 2005).

No. 12-41108

The government resolves this question by looking to the plain meaning of "violence" and cites Webster's Collegiate Dictionary, which defines "violence" as "an exertion of physical force so as to injure or abuse." In addition, the government cites a recent decision of the Eleventh Circuit, *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1338 (11th Cir. 2013), which held that, for purposes of the Armed Career Criminal Act ("ACCA"), a conviction under Florida's aggravated assault statute will always require a physical force element.

Alonzo–Garcia argues that a threat "to do violence" does not always require a threat of physical force, disqualifying if from the residual clause's definition of "crime of violence." Specifically, Alonzo–Garcia argues that threats of violence can include acts intended to cause emotional distress, which do not necessarily involve a threat of physical force. To substantiate this argument, Alonzo–Garcia points to the definition of "violence" in a Florida dating and sexual violence statute, which defines "violence" to include, among other things, "stalking and aggravated stalking." FLA. STAT. § 784.046(1)(a). Alonzo–Garcia cites our decision in *United States v. Insaulgarat*, where we held that Florida's aggravated stalking law does not "require any use, or threatened or attempted use, of physical force." 378 F.3d 456, 469 (5th Cir. 2004)*; see also* FLA. STAT. § 784.048(2) (defining the offense of stalking to include "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person"). He lists photographing, videotaping, and following the victim as possible violent acts covered by the statute, none of which requires a threat of physical force.

We agree with the government's approach and define "violence" as used in Florida's assault statute according to its plain meaning, *see* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (1st ed. 2012) (explaining that the "ordinary-meaning rule is the most fundamental

semantic rule of interpretation"), which is consistent with our precedent.[2] In *Flores–Gallo*, for example, we used the plain meaning of Kansas law to conclude that the state's aggravated battery statute contained a physical force element and therefore qualified as a crime of violence under the residual clause of Application Note 1(B)(iii). 625 F.3d at 823–24; *see also Johnson v. United States*, 559 U.S. 133, 138 (2010) (defining "physical force" as used in the ACCA according to its ordinary meaning).

The plain meaning of a threat "to do violence" as used in Florida's assault statute is a threat to use physical force. Black's Law Dictionary defines "violence" as the "use of physical force, usu[ally] accompanied by fury, vehemence, or outrage; esp[ecially], physical force unlawfully exercised with the intent to harm." Black's Law Dictionary 1705 (9th ed. 2009). Webster's Collegiate Dictionary 1396 (11th ed. 2007) likewise defines "violence" as an "exertion of *physical force* so as to injure or abuse." (emphasis added). These dictionary definitions show that a threat of violence equates to a threat of physical force. *See Johnson*, 559 U.S. 133 at 140 (citing several dictionary definitions and explaining that "[e]ven by itself, the word "violent" in [the ACCA] connotes a substantial degree of force"). In fact, when construed with these definitions of "violence," Florida's definition of "assault" parallels, almost identically, the residual clause of Application Note 1(B)(iii). Accordingly, we

---

[2] We decline to define "violence" in Florida's assault statute by borrowing from Florida's dating and sexual violence statute. Although we generally recognize the *in pari materia* canon of statutory construction, *see, e.g.*, *Little v. Shell Exploration & Prod. Co.*, 690 F.3d 282, 289 (5th Cir. 2012), it does not apply here. Section 784.046, which contains the definitions for Florida's dating and sexual violence statute, limits its definitions—including its definition of "violence"—to that section only. Fla. Stat. § 784.046(1). In addition, "a conventional limit on the canon is that courts should harmonize only those 'statutes addressing the same subject matter.'" *Little*, 690 F.3d at 289 (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006)). Here, Florida's dating and sexual violence statute addresses a specific range of criminal activities, *see* Fla. Stat. § 784.046(1), and we decline to shoe-horn its technical definition of "violence" into a generic assault statute.

No. 12-41108

conclude that both subsections of Florida's aggravated assault statute have as an element the use, attempted use, or threatened use of physical force against the person of another.[3]

Therefore, we hold that Alonzo–Garcia's 2011 Florida conviction qualifies as a crime of violence under the Guidelines and that the district court did not incorrectly apply a sixteen-level enhancement to Alonzo–Garcia's sentence.

III.

We now address whether the written judgment reflecting that Alonzo–Garcia was sentenced under a twenty-year maximum term of imprisonment, rather than a ten-year maximum, requires resentencing or, in the alternative, reformation of the judgment. We conclude that resentencing is not required, but we will remand the case for reformation of the judgment to reflect sentencing under the ten-year statutory maximum.

In this case, the PSR is inconsistent as to which maximum term of imprisonment applied: the first page of the PSR showed that Alonzo–Garcia was subject to a twenty-year maximum term of imprisonment, whereas paragraph forty-two of the PSR stated that Alonzo–Garcia was subject to only a ten-year statutory maximum pursuant to § 1326(b)(1). Neither the parties nor the district court discussed this inconsistency during the sentencing hearing. However, the district court's written judgment reflected that Alonzo–Garcia was

---

[3] This result is consistent with the Eleventh Circuit's decision in *Turner*, where the court held that "a conviction under [Florida's aggravated assault statute] will always include as an element the . . . threatened use of physical force against the person of another." 709 F.3d at 1338 (second alteration in original) (internal quotation marks omitted)). Although *Turner* dealt with an interpretation of the ACCA, we frequently rely on the analysis of decisions interpreting the ACCA when interpreting the Guidelines due to their similarity. *See, e.g.*, *United States v. Stoker*, 706 F.3d 643, 648–49 (5th Cir. 2013). Here, the residual clause of Application Note 1(B)(iii) tracks identically the statutory language in ACCA, and thus *Turner* is persuasive authority here. *Cf. Stoker*, 706 F.3d at 652–54 (Jones, J., concurring) (listing several distinctions between the ACCA and the Guidelines and cautioning in general against substituting analysis of one for the other).

No. 12-41108

sentenced under the twenty-year maximum term of imprisonment imposed by § 1326(b)(2).

Alonzo–Garcia argues on appeal that his sentence was improperly influenced by the district court's incorrect belief that he was subject to a twenty-year maximum term of imprisonment for a prior aggravated felony.  He argues that his 2011 Florida conviction does not qualify as an aggravated felony and that he should have been subject to the ten-year maximum in § 1326(b)(1), which only requires proof of a prior felony conviction.  According to Alonzo–Garcia, this error could have influenced the district court's selection of a sentence.

The government concedes that Alonzo–Garcia's 2011 Florida conviction does not qualify as an aggravated felony for purposes of § 1326,[4] and that the judgment should be reformed to reflect conviction under the ten-year maximum term of imprisonment.  Even so, the government argues that Alonzo–Garcia did not raise this issue before the district court and that, under plain error review, the district court's error does not require resentencing.  We agree.

A review of the record shows that Alonzo–Garcia did not object to his sentence on this ground before the district court.  Although Alonzo–Garcia argued that his 2011 Florida conviction did not qualify as an aggravated felony, he did so only to assert that he should not be subject to an offense-level enhancement under the Guidelines.  He  never objected to being subject to the twenty-year maximum term of imprisonment imposed by § 1326(b)(2). Accordingly, we review for plain error. *United States v. Olano*, 507 U.S. 725, 732 (1993).

Under plain error review, Alonzo–Garcia must show: (1) an error, (2) that

---

[4] In order to qualify as an aggravated felony under  § 1326, a conviction must have resulted in a sentence of at least one year of imprisonment.  *See United States v. Banda–Zamora*, 178 F.3d 728, 730 (5th Cir. 1999).  Here, Alonzo–Garcia's 2011 Florida conviction did not result in any term of imprisonment; rather, he received a sentence of three years of probation.

is plain, (3) and that affected his substantial rights. *Id.* After this showing, we will exercise discretion to correct the error (4) "only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Escalante–Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) (alterations in original) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Because the parties agree that under the plain text of the statute applied to the facts the district court incorrectly sentenced Alonzo–Garcia using a twenty-year, rather than a ten-year, maximum term of imprisonment, prongs one and two of plain error review have been met.

Under prong three of the plain-error analysis, Alonzo–Garcia must show a "reasonable probability that the result of the proceedings would have been different but for the error." *Olano*, 507 U.S. at 734. He has not met this burden. Nothing in the record indicates that the twenty-year maximum term of imprisonment played a role in the district court's sentencing decision, which was below the Guidelines range and well below the correct statutory maximum of ten years. Nor does his ultimate sentence of thirty months reflect any reliance on either statutory maximum. *See United States* v. *Mondragon–Santiago*, 564 F.3d 357, 369 (5th Cir. 2009) (holding that a district court's incorrect understanding of the statutory maximum sentence did not affect the defendant's substantial rights when "the record [did] not indicate the district court's sentence was influenced" by that understanding). To the contrary, neither the district court nor the parties discussed the issue at sentencing.

Alonzo–Garcia argues that the statutory maximum "could well have influenced" the district court's selection of a sentence. Where, as here, Alonzo–Garcia bears the burden to prove that the error affected the outcome in the district court, this bare allegation is not sufficient to show a "reasonable probability" that his sentence would have been different absent the error. Alonzo–Garcia cites no cases suggesting that a district court's use of an incorrect

maximum term of imprisonment, standing alone, is sufficient to meet this burden. *See, e.g.*, *Mondragon–Santiago*, 564 F.3d at 369 (holding that there was no reversible error under plain error review because the defendant did "not shown how, on [the] record, the error affected the outcome in the district court").

Finally, even assuming *arguendo* that the error was plain and affected Alonzo–Garcia's substantial rights, Alonzo–Garcia has not shown a miscarriage of justice that requires us to exercise our discretion under prong four of plain-error review. *Escalante–Reyes*, 689 F.3d at 419. We do not view this fourth prong as automatically met and therefore cannot correct an error simply because the first three prongs of plain-error review have been satisfied. *United States v. Garza*, 706 F.3d 655, 663 (5th Cir. 2013). "[W]hether a sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings is dependent upon the degree of the error and the particular facts of the case." *United States v. Garcia–Gonzalez*, 714 F.3d 306, 319 (5th Cir. 2013) (alteration in original) (quoting *United States v. John*, 597 F.3d 263, 288 (5th Cir. 2010)). On these facts, Alonzo–Garcia cannot establish that this error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

## IV.

For the foregoing reasons, we AFFIRM the district court's application of a sixteen-level enhancement, but REMAND to the district court for reformation of the judgment to reflect conviction and sentencing under 8 U.S.C. § 1326(b)(1), rather than § 1326(b)(2).