REAVLEY, Circuit Judge:
This Court implicitly held in United States v. Velasco, 465 F.3d 633 (5th Cir. 2006), that the Illinois aggravated battery statute is divisible—meaning that if a defendant has a prior conviction under that statute and a sentencing court must determine whether this prior conviction qualifies for a sentencing enhancement, the court should look to certain records of conviction to identify the particular offense of which the defendant had been convicted. Applying Mathis v. United States, — U.S. —, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016), we must decide whether that holding retains vitality. We find that it does.
Recitation of only a few facts is necessary. In April of 2015, defendant Osman Rutilio Reyes was convicted of aggravated battery under Illinois’ aggravated battery statute, 720 Ill. Comp, Stat. Ann. § 5/12-3.05. More specifically, he was convicted of aggravated.battery with a deadly weapon under Section 5/12-3.05(f)(l). Reyes was deported in May of that year. By August, he was back in the country. Immigration and Customs Enforcement agents apprehended him in Texas, and he pleaded guilty to violating 8 U.S.C. § 1326.
The district court found that Reyes’ pri- or conviction qualified as a crime of violence for. purposes of the United States Sentencing Guidelines and imposed a 16-level sentencing enhancement when calcu *318 lating the applicable Guidelines range. See USSG § 2L1.2(b)(l)(A)(ii). This ruling was required by Velasco, which had held that a conviction under the Illinois aggravated battery statute for aggravated battery based on the use of a deadly weapon necessarily involved “the use of force” and therefore categorically qualified as a crime of violence. 465 F.3d at 638-40 (citing 720 Ill. Comp. Stat. 5/12-4(b)(l)). The opinion also recognized that when Illinois’ aggravated battery statute cannot be “pare[d] down,” a conviction under the statute will not categorically qualify as a crime of violence because the “statute provides for the commission of the offense of aggravated battery in a number of different ways, some of which do =Hot require the use of physical force against a person.” Id. at 639 (quoting United States v. Aguilar-Delgado, 120 Fed.Appx. 522, 523 (5th Cir. 2004)).
Though Velasco foreclosed his argument, Reyes duly objected to a crime-of-violence sentencing enhancement on the grounds that the Illinois aggravated battery statute is indivisible. As that very case shows, a finding of indivisibility would establish the sentencing enhancement’s impropriety. See Velasco, 465 F.3d at 639. Oh appeal, we consider Reyes’ divisibility argument in light of Mathis, and review is de novo. See United States v. Sam, 467 F.3d 857, 861 (5th Cir. 2006). Because Reyes is challenging a precedent of this Court, he must show that Mathis “unequivocally abrogated” Velasco. United States v. Tanksley, 848 F.3d 347, 350 (5th Cir.), supplemented, 854 F.3d 284 (5th Cir. 2017). Mathis “is controlling regarding the methodology of the modified categorical approach,” United States v. Hinkle, 832 F.3d 569, 574 (5th Cir. 2016), so our task is to check the result of Velasco according to the method of Mathis, see Tanksley, 848 F.3d at 351.
The broad issue in this case is whether Reyes’ conviction under the Illinois aggravated battery statute properly counts as a crime of violence under the Guidelines. “To determine whether a given prior conviction qualifies for a Guidelines enhancement, courts use either (1) the categorical approach or (2) the modified categorical approach.” United States v. Rico-Mejia, 859 F.3d 318, 322 (5th Cir. 2017). Courts applying the categorical approach simply “look to the elements of the offense enumerated or defined by the Guideline section and compare those elements to the elements of the prior offense for which the defendant was convicted.” United States v. Howell, 838 F.3d 489, 494 (5th Cir. 2016).
Some statutes resist this approach because they “list elements in the alternative, and thereby define multiple crimes.” Mathis, 136 S.Ct. at 2249. When confronted with such a statute, courts employ the modified categorical approach and examine “a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.” Id. Some statutes seem at a glance to bear this same structure but, upon examination, merely list “various factual means of committing a single element.” Id. When a statute lists different possible ways of committing one crime, the modified categorical approach is impermissible. Id. at 2251.
The Illinois aggravated battery statute is lengthy and complex. See 720 Ill, Comp. Stat. § 5/12-3.05(a)-(g). According to the government, the statute sets forth the necessary alternative elements that render the modified categorical approach permissible and allow Reyes’ prior conviction to be identified as an aggravated battery involving the use of a deadly weapon. See 720 Ill. Comp. Stat. § 5/12-3.05(f)(l). According to Reyes, the statute is indivisible *319 and “overbroad” in that it “sweeps in conduct that does not qualify as a ‘crime of violence.’ ” Reyes’ fallback position is that even if the aggravated battery statute can be narrowed to Section 5/12-3.Q5(f), it' cannot be narrowed further. In other words, Section 5/12-3.05(f) is itself indivisible and overbroad.
In determining if the aggravated battery statute is divisible, we look to its alternative components and ask “elements or means?” Mathis, 136 S.Ct. at 2256. State law governs this “threshold inquiry.” Id. State courts are the ideal expositors of state law, but we may also examine the statutory text and structure or, if necessary, “the record of a prior conviction itself.” Id. If the Illinois aggravated battery statute lists various means of committing one aggravated battery offense, it is indivisible. Hinkle, 832 F.3d at 575. In such a case, a jury need not agree on how the offense was committed, and Reyes’ crime of conviction could not be narrowed to encompass any one factual theory, no matter the actual evidence or indictment in his case. Mathis, 136 S.Ct. at-2251. Elements, by contrast, are those “things the ‘prosecution must prove to sustain a conviction.’ ” Id. at 2248 (quoting. Black’s Law Dictionary 634 (10th ed. 2014)). Distilled to its essence, Mathis recognizes that, when applying a recidivism statute to a defendant’s prior convictions, each “crime of conviction” is defined by solely by its elements. Id. at 2251. “How a given defendant actually perpetrated the crime” is irrelevant, “regardless of whether a statute omits or instead specifies alternative possible means of commission.” Id.
We first consider Reyes’ broad argument: that the “aggravated battery statute contains [a] lengthy list of ways that a person can violate the statute.” (Emphasis added-(citing 720 Ill. Comp. Stat. § 5/12-3.05(a)-(g)).) Do its many subsections and their nested paragraphs simply establish a multiplicity of ways of committing one aggravated battery offense? No. The Supreme Court of Illinois recently analyzed the aggravated battery statute and held that it contained (at least) two different crimes requiring different proofs.[1] People v. Cherry, 407 Ill.Dec. 439, 63 N.E.3d 871, 877 (2016) (discussing aggravated battery and aggravated battery with a firearm).
The Illinois aggravated battery statute sets forth many types of aggravated battery. It is error to'analyze the statute as if it instead establishes a basic aggravated battery offense that is supplemented throughout the rest of the statute by various further-aggravating circumstances. Thus, in Cherry, the Supreme Court of Illinois, rejected the appellate court’s conclusion that aggravated battery with a firearm was merely “an enhanced version of aggravated battery.” Id. (quoting People v. Cherry, 387 Ill.Dec. 624, 22 N.E.3d 1277, 1283 (App. Ct. 2014)). And it chided the lower court for “wholly ignoring] the actual elements of these offenses.” Id.
[T]he statutory elements plainly demonstrate that, rather than being an aggravated or enhanced version of aggravated battery, aggravated battery with a firearm is, like aggravated battery itself, an aggravated or enhanced version of battery. The aggravated battery and aggravated battery with a firearm statutes, share' an identical structure. Both offenses require the State .to prove the commission of a battery, and both "offenses require the State to prove the presence of an additional factor aggravating that battery.
Id. (emphases added).
Cherry thus forecloses Reyes’ argument that the entirety of the aggravated battery *320 statute is indivisible. Accordingly, our focus shifts to one particular subsection, Section 5/12-3.05(f). Reyes’ “crime of conviction” for purposes of Mathis is either a Section 5/12-3.05(f) violation (aggravated battery based on the use of á weapon or device) or a 5/12-3.05(f)(1) violation (aggravated battery involving the use of a deadly weapon). See 136 S.Ct. at 2251.
In its entirety, subsection (f) reads as follows:
Offense based on use of a weapon or device. A person commits aggravated battery when, in committing a battery, he or she does any of the following:
(1) Uses a deadly weapon other than by discharge of a firearm, or uses an air rifle as defined in Section 24.8-0.1 of this Code. ■
(2) Wears a hood, robe, or mask to conceal his or her identity.
(3) Knowingly and without lawful justification shines or flashes a laser gun-sight or other laser device attached to a firearm, or used in concert with a firearm, so that the laser beam strikes upon or against the person of another. .
(4) Knowingly video or audio records the offense with the intent to disseminate the recording.
720 Ill. Comp. Stat. Ann. 5/12-3.05(f).
As can be seen from the statute, if Reyes’ crime of conviction is aggravated battery based on the use of a weapon or device, then the conviction would not categorically qualify as a crime of violence under the Guidelines; the conviction could be based on wearing a hood while committing a non-violent battery, for instance. But if the crime of conviction is aggravated battery involving the use of a deadly weapon it categorically qualifies as a crime of violence under the Guidelines. United States v. Sanchez-Sanchez, 779 F.3d 300, 305 (5th Cir. 2015). We must determine the nature of Section 5/12-3.05(f). Do paragraphs (1) through (4) itemize means' of committing a single crime, or do paragraphs (1) through (4) represent distinct crimes with distinct elementsl See Hinkle, 832 F.3d at 575.
We are aware of no Illinois case describing aggravated battery based on the use of a weapon or device as a unitary offense, which offense may be. proven by showing that Section 5/12-3.05(f) was violated in any one of four ways enumerated in paragraphs (1) through (4) of that subsection. Compare Mathis, 136 S.Ct. at 2256 (finding the Iowa burglary statute indivisible because of a state supreme court holding that “[t]he listed premises in Iowa’s burglary law ... are ‘alternative method[s]’ of committing one -offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle” (quoting State v. Duncan, 312 N.W.2d 519, 523 (Iowa 1981))). But nor can we find cases holding that Section 5/12-3.05(f) describes four different crimes with four distinct sets of elements. Compare United States v. Uribe, 838 F.3d 667, 670 (5th Cir. 2016) (holding that the Texas burglary statute, which describes three forms of burglary, is divisible because the Texas Court of Criminal Appeals had previously held that each “type” of burglary had its own set of elements (citing Day v. State, 532 S.W.2d 302, 306 (Tex. Crim. App. 1975))).
There are cases, however, that answer the precise question necessary to resolve this case: whether Section 5/12-3.05(f)(1) is a distinct crime (aggravated battery involving the use of a deadly weapon) that includes, as an element, use of a deadly weapon in the commission of a battery. We return to Cherry, where Illinois’ high court said exactly this. There, the court used a wide-ranging discussion of *321 the Illinois aggravated battery statute to explain its ultimate holding—that aggravated battery with a firearm is a separate offense from aggravated battery. In the process, it asked the reader to consider the example of aggravated battery “involving the use of a deadly weapon other than a firearm.” Cherry, 407 Ill.Dec. 439, 63 N.E.3d at 877, To “prove” this “offense,” the court said, “the State must prove that the defendant: ‘in committing a battery, used a deadly weapon other than by the discharge of a firearm.’ ” Id. (quoting 720 Ill. Comp. Stat. Ann. 5/12-4(b)(l)) (cleaned up). Thus, aggravated battery involving the me of a deadly weapon is not a way of committing aggravated battery or even aggravated battery based on the use of a weapon or device-, it is a distinct offense requiring proof of the use of a deadly weapon. And there is no shortage of consistent Ilhnois decisions.[2] There is also an abundance of cases that do not address the issue but demonstrate that defendants accused of '' violating 5/12-3.05(50(1) are charged with and convicted of violating 5/12-3.05(50(X>.[3] Any purported Illinois crime known as aggravated battery based on the use of a weapon or device is a chimera; the crime of aggravated battery involving the use.of.a deadly weapon is routinely charged and proven. •
It is true that Cherry’s discussion of Section 5/12-3.05(f)(1) is dicta. We follow it for several reasons: First, a federal court tasked with interpreting state law must give state supreme court dicta great weight.[4] Avakian v. Citibank, N.A., 773 F.3d 647, 651-52 (5th Cir. 2014). Second, the- statements in Cherry follow from its parsing of the relevant statutory language. Velasco reached the same result based on a similar parsing, 465 F,3d at 639-40, and Mathis endorses examinations of the statutory text when no state supreme court decision provides a definitive answer, 136 S.Ct. at 2256. Third, under Illinois’ Murderer and Violent Offender Against Youth Registration Act, a “violation or attempted violation” of Section 5/12-3.05(f)(l) can constitute a “violent offense against youth,” but subsections 5/12-3.05(f)(2)-(4) are not listed as qualifying offenses. 730 Ill, Comp. *322 Stat. Ann. 154/5(b)(4.4). This works only if Section 12-3.05(f)(l) describes a discrete offense.
The Dissent announces it has found a Mathis-approved state court decision that conclusively resolves the question, People v. Diaz, 244 Ill.App.3d 268, 185 Ill.Dec. 134, 614 N.E.2d 268 (1993), But Diaz turns out to be (1) .Illinois law on the permissibility of general verdicts where a defendant is charged with multiple and distinct , offenses, and is unrelated to the present case where conviction matches the crime charged and satisfies. federal sentencing requirements; (2) a mere intermediate state court opinion, (3) a case that did not consider the statute before us and was in fact decided before both Section 12-3.05 and its predecessor statute (discussed in Cherry), were ever enacted, and (4) a case simply not involving statutory language, design, or meaning. Inasmuch as Diaz does not address Section 12-3.05(f) and therefore could' not have possibly determined its divisibility, it is legally off-topic. Inasmuch as it deals with a situation where the prosecution seeks to convict under two different “definitions” of aggravated battery, it is factually inapt. But even if we overlook all of this and proceed as if Diaz muddled the picture, a return to our Mathis-mandated order of operations confirms our conclusion that Reyes’ prior conviction qualifies, as a crime of violence.
Diaz plainly does not “definitively answer[] the question” béfore ufe. Mathis, 136 S.Ct. at 2256. Accordingly, if the Dissent is not convinced by Cherry (and the host of intermediate appellate court decisions we have cited that do involvé the relevant statute), it should next examine the statutory text—which, as we have noted, Cherry does. Id. And if there is still no good answer,' “federal judges have another place to look: the record of a prior conviction itself.” Id. At this third Mathis step, courts utilize record documents as an aid in determining a statute’s divisibility. See id. at 2257 n. 7 (“[W]hen state law does not resolve the means-or-elements question, courts should ‘resort[ ] to the [record] documents’ for help in making that determination.’ ” (quoting Descamps v. United States, — U.S. —, 133 S.Ct. 2276, 2285 n.2, 186 L.Ed.2d 438 (2013)) (alterations in original)).
An indictment can resolve the elements-means question “by referencing one alternative term to the exclusion of all others,” thereby indicating “that the statute contains a list of elements, each one of which goes toward a separate crime.” Id. Here, Reyes’ indictment is in the record. In Count 1—the count to which he pleaded guilty—Reyes was charged with “committing a battery ... by use of a deadly weapon” and, more specifically still, with “a violation of 720 ILCS 5/12-3.05(f)(l).” There is no mention of Section 12-3.05(f)’s remaining provisions. This , “peek” at the indictment was not necessary to determine Section 12-3.05(f). is divisible. But it demonstrates that Diaz has no application. “As was charged in this case, a person commits aggravated battery when he intentionally or knowingly without legal justification uses a deadly weapon other than a firearm to cause bodily harm to an individual.” Marston, 289 Ill.Dec. 58, 818 N.E.2d at 1267 (emphasis added).
Reyes was charged and convicted of violating Section 5/12-3.05(f)(l). Aggravated battery involving use of a deadly weapon under Section 5/12-3.05(f)(l) is a discrete offense requiring proof of -the use of a deadly weapon. It has been established, categorically, that the offense of which he was convicted represents a crime of violence under the Guidelines. The district court did not err in following Velasco and applying the crime-of-violence enhancement.
*323 Illinois’ aggravated battery statute is complex and has many parts. We have held that its Section 5/12-3.05(0 is divisible and that a conviction under Section 5/12-3.05(f)(1) requires proof of the use of a deadly weapon. We have no occasion to examine the statute further. Mathis did not abrogate Velasco, and the sentence is AFFIRMED.

. The code numbers cited herein are different than those referenced 'in both Velasco and Cherry because this portion of the Illinois penal code has been renumbered.

. People v. Marston, 353 Ill.App.3d 513, 289 Ill.Dec. 58, 818 N.E.2d 1261, 1267 (2004) (where defendant was charged with aggravated battery with a deadly weapon: "As was charged in this case, a person commits aggravated battery when he intentionally or knowingly without legal justification uses a deadly weapon other than a firearm to cause bodily harm to an individual.”); People v. Blanks, 361 Ill.App.3d 400, 300 Ill.Dec. 580, 845 N.E.2d 1, 11-12 (2005) (describing proof of the use of a deadly weapon as "the aggravating factor which satisfies the statute”); People v. Garita, 2016 WL 7228782, *3 (Ill. App. Ct. 2016) (unpublished) ("[T]he aggravated battery with a deadly weapon charge required the State to prove.that defendant caused bodily harm to [the victim] while using a ‘deadly weapon other than by discharging a firearm.’ ” (quoting Section 5/12:3.05(f)(1))).

. See, e.g., People v. Pratt, 2017 WL 1497733, at *1 (Ill. App. Ct. Apr. 25, 2017) (unpublished); People v. Williams, 412 Ill.Dec. 985, 77 N.E.3d 153, 156-57 (App. Ct. 2017); People v. Khan, 2017 WL 1019777, at *1 (Mar. 14, 2017) (unpublished); People v. Curry, 2017 WL 776082, at *1 (Ill. App. Ct. Feb. 24, 2017) (unpublished); see also People v. Crespo, 203 Ill.2d 335, 273 Ill.Dec. 241, 788 N.E.2d 1117, 1122 (Ill. 2001), as- modified on denial of reh’g (Mar, 31, 2003) (defendant charged with distinct aggravated battery offenses, including "aggravated battery (great bodily harm)” and "aggravated battery (deadly weapon)”).

.When, as here, a federal court must identify and apply state law in the absence of a clearly controlling state supreme court opinion, the analogous Erie inquiry calls on federal courts to "guess” how a state supreme court “would decide.” Howe ex rel. Howe v. Scottsdale Ins, Co., 204 F.3d 624, 627 (5th Cir. 2000). This "guess” is not a surmise of what the state law would become if the state supreme court addressed the issue but rather what the state law is. See, e.g., Batts v. Tow-Motor Forklift Co., 66 F.3d 743, 749-50 (5th Cir. 1995).