

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-18-00010-CV

IN RE ROGERS WEALTH GROUP,                          RELATORS
INC. AND DALE ROGERS

----------

ORIGINAL PROCEEDING
TRIAL COURT NO. 141-292402-17

----------

## MEMORANDUM OPINION[1]

----------

Relators Rogers Wealth Group, Inc. and Dale Rogers seek mandamus relief from the trial court's order denying their joint motion to strike real party in interest Caroline Nunley's petition in intervention. We conditionally grant the writ of mandamus.

---

[1]*See* Tex. R. App. P. 47.4, 52.8(d).

# I. BACKGROUND

## A. MEGAN RAETZ FILES SUIT

On May 31, 2017, Megan Raetz filed a lawsuit against Rogers Wealth Group, Inc. and Dale Rogers. According to Raetz's original petition, Dale is the chief executive officer of Rogers Wealth. Raetz alleges that Dale hired her as an administrative assistant in December 2014 and that she was later promoted to serve as his personal assistant. She claims that while serving as Dale's personal assistant, she was told to sit for pictures in Dale's office and to escort him to and from his car in such a way as to allow him to walk behind her and make comments about the fit of her clothes and about her backside. Raetz also claims that on a weekly basis, Dale made unwelcome suggestive comments to her. She further alleges Dale propositioned her for trips to Las Vegas in his private jet and made constant sexual innuendos toward her.

Raetz also alleges that Dale put his whole palm on her buttock and left it there until she moved it away and that on multiple occasions, he trapped her between desks with his body. She claims that on one occasion, Dale shut the door to her office and asked her what she was doing after work, offered her money for dinner and drinks, and told her not to tell anyone, especially her husband. According to Raetz, Dale also joked about being caught staring at her breasts, and he would strategically position himself so that he could look down into her shirt or look at her legs.

Raetz claims she complained about Dale's conduct to three supervisors but either was told not to make a big deal of it or was ignored. She asserts that after she made her complaints, the company indicated it would be conducting employee reviews but that only she and one other employee were actually reviewed. After her review, Raetz alleges she was disciplined for having a "negative attitude." She asserts that she felt humiliated on a daily basis because her complaints were ignored and could not endure Dale's conduct any longer, so "[s]he had no choice but to constructively discharge."

Based upon all of this alleged conduct, Raetz asserts claims against Dale and Rogers Wealth for discrimination and harassment under the Texas Labor Code, assault, false imprisonment, intentional infliction of emotional distress, negligence, and defamation. According to her petition, Raetz seeks damages for back and front pay; emotional pain; past and future mental anguish; loss of enjoyment of life; expert fees; attorney's fees; costs incurred in pursuing this lawsuit; and pre- and post-judgment interest. She also seeks exemplary damages.

### B. NUNLEY FILES PETITION IN INTERVENTION

On August 25, 2017, Nunley filed a petition in intervention in Raetz's suit. *See* Tex. R. Civ. P. 60. In her petition, Nunley alleges that Dale hired her as an administrative assistant in August 2015 (approximately eight months after Raetz alleges he had hired her). Nunley alleges that Dale undertook the same sort of conduct toward her that Raetz alleges in her original petition. For example, like

3

Raetz, Nunley alleges that she was told to escort Dale to and from his car, being always sure to allow him to walk behind her, and that he would make comments about the fit of her clothes and about her backside. Like Raetz, Nunley alleges that Dale propositioned her for trips to Las Vegas on his jet. In addition, Nunley asserts that Dale made unwelcomed comments in front of clients and other employees about the fit of her clothes and about her legs when she was wearing skirts. She claims that Dale would comment on her looks, that he would walk close to her in order to graze her breasts, and that he would make constant sexual innuendos toward her.

Nunley claims that on one occasion, Dale told her that if another male employee "did not make her his," then he (Dale) would. She alleges that while she was sitting at her desk, Dale would come up behind her and put his hands on her shoulders. And, Nunley asserts, Dale would ask her if she had a boyfriend and if she was having any problems paying rent, and he would also offer her money, insisting that she not tell anyone. Like Raetz, Nunley claims that she complained about Dale's conduct to three supervisors but either was told not to make a big deal of it or was ignored. She asserts that she felt humiliated on a daily basis because her complaints were ignored and that she could not endure the treatment, so she was forced to leave her job.

4

Based upon all of this alleged conduct, Nunley asserts the exact same causes of action against Dale and Rogers Wealth that Raetz has asserted, and Nunley also seeks the same types of damages that Raetz has sought.[2]

### C. DALE AND ROGERS WEALTH MOVE TO STRIKE NUNLEY'S INTERVENTION

On October 2, 2017, Dale and Rogers Wealth filed a motion to strike Nunley's petition in intervention. *See* Tex. R. Civ. P. 60. They argued that the trial court should strike Nunley's petition because she did not have any justiciable interest in Raetz's suit and because her intervention would complicate the case by excessively multiplying the issues in the litigation. Nunley did not respond to Dale and Rogers Wealth's motion to strike. On November 16, 2017, the trial court held a hearing on the motion to strike and signed an order denying that motion. Dale and Rogers Wealth now seek mandamus relief from that order.

## II. MANDAMUS STANDARD

To be entitled to mandamus relief, Dale and Rogers Wealth must establish that the trial court committed a clear abuse of discretion and that they have no adequate remedy by appeal. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding).

---

[2]Indeed, the portions of Nunley's petition in intervention that set out her causes of action and her damages are near carbon-copies of the portions of Raetz's original petition that set out her causes of action and her damages, the major difference being that Nunley has substituted "Intervenor" and "Intervener Nunley" in the places where Raetz has used "Plaintiff" and "Plaintiff Raetz."

## III. APPLICABLE LAW

Rule 60 of the Texas Rules of Civil Procedure provides that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. By virtue of this rule, a party with a justiciable interest in a pending suit may intervene in the suit as a matter of right. *See In re Union Carbide Corp.*, 273 S.W.3d 152, 154 (Tex. 2008) (orig. proceeding). Because intervention is permitted as a matter of right, the justiciable-interest requirement is of paramount importance. *See id.* at 155. That requirement "defines the category of non-parties who may, without consultation with or permission from the original parties or the court, interject their interests into a pending suit to which the intervenors have not been invited." *Id.* The justiciable-interest requirement therefore "protects pending cases from having interlopers disrupt the proceedings." *Id.*

The parties to a pending proceeding can protect themselves from an intervention by filing a motion to strike. *See* Tex. R. Civ. P. 60; *Union Carbide*, 273 S.W.3d at 155. If any party to the pending suit moves to strike the intervention, the intervenor then has the burden to show he has a justiciable interest in the pending suit. *See Union Carbide*, 273 S.W.3d at 155. To constitute a justiciable interest,

> the intervenor's interest must be such that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought in the original suit. In

6

other words, a party may intervene if the intervenor could have brought the pending action, or any part thereof, in his own name.

*Id.* (cleaned up).[3]  If the intervenor fails to show a justiciable interest in the pending suit, then the trial court has no discretion to deny the party's motion to strike the intervention.  *See Union Carbide*, 273 S.W.3d at 156; *In re Empire Scaffold, LLC*, No. 09-16-00052-CV, 2016 WL 1469185, at *2 (Tex. App.—Beaumont Apr. 14, 2016, orig. proceeding) (holding that trial court abused its discretion by failing to grant motion to strike intervention when intervenor was unable to show justiciable interest in underlying suit).

## IV.  ABUSE OF DISCRETION

Dale and Rogers Wealth argue that the trial court abused its discretion by denying their motion to strike because Nunley failed to establish she has a justiciable interest in Raetz's suit against them.

---

[3]The "cleaned up" parenthetical, we recently noted, "is fast gaining traction since first being proposed" in 2017.  *State v. Marks*, No. 02-16-00434, 2017 WL 6947901, at *4 n.12 (Tex. App.—Fort Worth Oct. 19, 2017, no pet.) (mem. op., not designated for publication).  This parenthetical "signals that ungainly and substantively unnecessary brackets, ellipses, embedded quotation marks, and the like have been stripped from the source being quoted without coming out and saying so."  *Id.* (citing Jack Metzler, *Cleaning Up Quotations, J. App. Prac. & Process* (forthcoming 2018), http://dx.doi.org/10.2139/ssrn.2935374 (last visited Mar. 9, 2018)); *see United States v. Steward*, 880 F.3d 983, 988 n.3 (8th Cir. 2018) (noting that "'[c]leaned up' is a new parenthetical used to eliminate unnecessary explanation of non-substantive prior alterations" and "can be used when extraneous, residual, non-substantive information has been removed" from a quotation); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017); *In re Shipman*, No. 16-0607, 2018 WL 1022467, at *3 (Tex. Feb. 23, 2018) (orig. proceeding); *Cadena Comercial USA Corp. v. Tex. Alcohol & Beverage Comm'n*, 518 S.W.3d 318, 341 n.18 (Tex. 2017) (Willett, J., dissenting).

## A. WAIVER

Nunley contends that Dale and Rogers Wealth should be estopped from obtaining their requested relief because they invited the trial court to commit the error that they now complain of in this mandamus. She argues that during the hearing on their motion to strike, there was a discussion concerning what the harm would be in allowing the intervention to proceed temporarily. She argues that counsel for Dale and Rogers Wealth expressed a preference that their clients be deposed only once and that they elected to allow the intervention to proceed temporarily in exchange for the benefit of their clients only having to submit to one deposition. Only after their depositions were taken did Dale and Rogers Wealth file this mandamus, argues Nunley. Thus, Nunley urges, Dale and Rogers Wealth "should be estopped on the basis of estoppel or waiver from asserting the trial court erred by denying the motion to strike when they agreed to it and further requested limited depositions."

We do not agree that Dale and Rogers Wealth invited the error they complain of in this mandamus. The record from the hearing shows that the trial court opened the hearing on the motion to strike by suggesting sua sponte that it would be more efficient to keep Raetz and Nunley's cases together temporarily to avoid duplicative discovery and to consider separate trials down the road. The trial court stated that this proposal would "save [Dale and Rogers Wealth] some time in that [they would] only have to sit through one deposition." Operating under the belief the court was postponing a ruling on the motion to strike, Dale

8

and Rogers Wealth's counsel stated, "We would prefer that he not be deposed twice, Your Honor," but they further explicitly declared they were amenable to the proposal, so long as proceeding that way would not waive their right to reassert the motion to strike at a later time. The trial court assured them they were "not waiving anything" but that "we're just trying to be efficient."

Counsel for the intervenor then presented the trial court with a proposed order denying the motion to strike, and the trial court indicated it would deny the motion to strike but offered to include in the order that it would "consider a separate trial motion later." At this point, Dale and Rogers Wealth's counsel stated, "Well, actually, Your Honor, under the case law we're entitled to have [the petition in intervention] stricken, and I could explain why." The court explained that it had denied the motion but that it would not prevent Dale and Rogers Wealth's counsel from seeking separate trials at a later time. Counsel for Dale and Rogers Wealth then indicated that its motion dealt with an issue aside from efficiency: the justiciable interest requirement for intervention and that allowing the intervention when Nunley has no justiciable interest would allow her to circumvent Tarrant County's provision for the random assignment of cases. The trial court was undeterred, even after this argument was presented, making it clear that the motion to strike was denied.

The invited error doctrine applies to situations where a party requests the court to make a specific ruling and then complains of that ruling on appeal. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (orig.

9

proceeding). From the above, it is clear that counsel for Dale and Rogers Wealth did not invite the trial court to deny their motion to strike. To the contrary, when it became clear that the trial court intended to deny the motion rather than simply delay a decision on it, counsel for Dale and Rogers Wealth argued the motion to strike should be granted because Nunley has no justiciable interest in Raetz's suit. In addition, during the hearing, the trial court expressly assured counsel for Dale and Rogers Wealth that they were "not waiving anything." We therefore conclude that Dale and Rogers Wealth are not estopped from seeking the mandamus relief they have requested.

### B. NUNLEY HAS SHOWN NO JUSTICIABLE INTEREST IN RAETZ'S SUIT

Nunley did not file any response to Dale and Rogers Wealth's motion to strike. No evidence was introduced at the hearing by Nunley on the motion to strike to meet her burden to show she had a justiciable interest in Raetz's suit. And her petition in intervention does not allege that, or otherwise show how, she has a justiciable interest in Raetz's suit. Indeed, rather than showing she could have brought Raetz's claims, or any part of them, in her own name, Nunley's petition instead shows that she is asserting her own personal claims against Dale and Rogers Wealth.

Nunley contends that her petition establishes she has a justiciable interest in Raetz's suit because the nature of her allegations against Dale and Rogers Wealth is inextricably intertwined with the allegations Raetz has alleged against them. Nunley asserts, for the first time in this mandamus proceeding, that she

10

has a justiciable interest in Raetz's suit because "together [she and Raetz] form a group of humans, treated terribly due to their gender, not due to their discrete individual-ness." Nunley then argues, in conclusory fashion, that to find she has no justiciable interest in Raetz's suit "is to seriously prejudice her and Raetz from presenting their case to the jury."

To be sure, Raetz and Nunley have alleged identical causes of action against Dale and Rogers Wealth, their causes of action are premised upon conduct that is similar in its nature, and they both seek the same types of damages. But that does not mean Nunley has a justiciable interest in Raetz's suit under the governing standard set forth in *Union Carbide*. *See* 273 S.W.3d at 155 (concluding that intervenors' allegations that they sustained injuries similar to those alleged by the plaintiff and that their injuries were caused by exposure to the same toxic chemical the plaintiff alleged caused his injuries were insufficient to establish intervenors had a justiciable interest in the plaintiff's suit where intervenors did not show that their controversy against the defendants would be affected or resolved by resolution of the plaintiff's case). Under *Union Carbide*, a justiciable interest exists if the intervenor could have brought the pending action, or any part thereof, in his own name. *See id.* Because Nunley has not shown that she could have brought even some part of Raetz's suit in her own name, she has not met her burden to show she has a justiciable interest in Raetz's suit. *See id.* And since Nunley failed to show a justiciable interest, the trial court had no discretion to deny Dale and Rogers Wealth's motion to strike the intervention.

11

*See id.* at 156; *In re Empire Scaffold, LLC*, 2016 WL 1469185, at *2. Thus, the trial court abused its discretion by denying the motion to strike.

## V. ADEQUATE REMEDY

Dale and Rogers Wealth argue that they have no adequate remedy by appeal from the trial court's erroneous denial of their motion to strike because that decision allows Nunley to circumvent Tarrant County's procedure for randomly assigning cases. *See* Tarrant (Tex.) Loc. R. 1.03(a) ("Except as provided elsewhere in this Rule, cases will be filed by random selection in courts designated for the subject matter of the litigation"). Nunley contends, however, that Dale and Rogers Wealth have an adequate remedy because the trial court's order expressly provides that Dale and Rogers Wealth can move for separate trials at a later date; thus, Nunley contends, they still have the opportunity to defend the separate cases before separate juries.

An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). In *Union Carbide*, the supreme court considered the claim that Dale and Rogers Wealth urge here: that there was no adequate remedy by appeal from the trial court's failure to strike an improper intervention because that error enabled the intervenors to evade the jurisdiction's procedure for the random assignment of cases and, thus, to choose the specific trial court in which to bring their claims. *See* 273 S.W.3d at 157. The court concluded that there was significant benefit from mandamus relief because

12

procedures for the random assignment of cases are designed to prevent forum shopping, and practices that subvert such procedures breed disrespect for and threaten the integrity of our judicial system. *Id.* The court therefore held that Union Carbide had established it did not have an adequate remedy by appeal. *Id.*

The same benefit of relief exists here that existed in *Union Carbide*: granting relief will prevent Nunley from effectively choosing the trial court in which to litigate her claims by using the mechanism of an intervention to avoid Tarrant County's procedures for the random assignment of cases. *See id.*; *see also* Tarrant (Tex.) Loc. R. 1.03(a). And Nunley has not demonstrated any detriment to the granting of relief in this case. Tellingly, Nunley's response completely fails to address the ruling in *Union Carbide*, despite counsel's acknowledgement at the hearing of the exact issue: "Technically if you grant the motion to strike, I guess that means I have to start over, and I just go file a petition, and I'd probably wind up in a different court with a less qualified, less smart, you know, less efficient judge, so we don't want that." Thus, we conclude that Dale and Rogers Wealth have established they have no adequate remedy by appeal from the trial court's denial of their motion to strike. *See id.* at 157; s*ee also In re Woodlands Land Development Co., L.P.*, No. 09-13-00123-CV, 2013 WL 1790878, at *3 (Tex. App.—Beaumont Apr. 25, 2013, orig. proceeding) (holding that relators established no adequate remedy by appeal from the trial court's erroneous denial of their motion to strike intervention in part because "the trial

13

court's ruling allowed Intervenors to avoid Montgomery County's case assignment system").

## VI.  CONCLUSION

Because Dale and Rogers Wealth have established that the trial court committed a clear abuse of discretion and that they have no adequate remedy by appeal, they are entitled to mandamus relief.  *See Ford Motor Co.*, 165 S.W.3d at 317.  Accordingly, we conditionally grant a writ of mandamus and direct the trial court to vacate its order denying Dale and Rogers Wealth's joint motion to strike Nunley's petition in intervention and to enter an order granting that motion.  *See* Tex. R. App. P. 52.8(c).  Our writ will issue only if the trial court fails to comply.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  GABRIEL, PITTMAN, and BIRDWELL, JJ.

DELIVERED:  March 9, 2018

14